2008 ME 150

### STATE of Maine

v.

### Vinson D. MANGOS.

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2008.

Decided: Oct. 7, 2008.

Robert J. Ruffner, Esq., Vincent, Kantz & Ruffner, LLC, Portland, ME, for Vincent Mangos.

Norman R. Croteau, District Attorney, Craig E. Turner, Dep. Dist. Atty., Auburn, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶ 1]   Vinson D. Mangos appeals from a judgment entered in the Superior Court (Androscoggin County, *Marden, J.*) following a jury trial finding him guilty of robbery (Class A), 17–A M.R.S. § 651(1)(E)

(2007). Mangos argues that the court committed reversible error when it admitted DNA evidence purporting to link Mangos to the robbery without requiring the State to establish a sufficient foundation prior to its admission, and without allowing Mangos the opportunity to confront and cross-examine the chemist from the Maine Crime Laboratory, who the State asserted collected the DNA samples from the articles of clothing worn during the robbery.[1] We agree and vacate the judgment.

## I.  CASE HISTORY

[¶ 2]  At approximately 3:45 A.M., on April 18, 2006, a male individual entered the Big Apple convenience store on Lisbon Street in Lewiston, walked around the counter, shoved the store employee into the imprinter machine, and demanded all the money in the store.  The employee pushed the person away, but the person held a knife to the employee's ribs, and the employee complied with his demands.  The employee testified that the person was wearing "some kind of shirt or a pair of short legs cut off or something, like a makeshift mask that he pulled right over his head," and that under the shirt he also had on a bandanna.  When the employee pushed the person, he was able to see his face.  The employee had seen the person in the store several days before attempting to buy beer for someone who had no identification.  At trial, the employee identified Mangos as the robber, as did another individual who was in the store at the time of the robbery.  Both of the eyewitnesses, when shown a photo lineup after the robbery, identified Mangos as the robber, but there was another person in the lineup who they said could have been the person who robbed the store.

[¶ 3]  One of the officers who responded to the incident at the Big Apple searched the area around the store.  He found a t-shirt and a bandanna near the store, at the intersection of Scribner Boulevard and Scribner Circle.  The employee identified the t-shirt and bandanna as what the robber was wearing over his face.

[¶ 4]  The officer gave the t-shirt and bandanna to Detective Brian O'Malley, who labeled them and gave them to the evidence technician for the Lewiston Police Department.  On April 21, 2006, the clothing items were delivered to the Maine State Police Laboratory and received by Marlene Richards, a forensic technician.  Richards, who serves as a database administrator, testified to the process of handling and labeling evidence, and explained how the chain of custody is maintained and documented.  The documents indicate that Nancy Keune, a Forensic Chemist I, received the clothing, and would have been the person to create the three DNA swabs from the two items of clothing.  Keune did not testify at Mangos's trial, however.  Gretchen Lajoie, Keune's supervisor, testified to the procedure used for swabbing articles of clothing, including how swabs are prepared, labeled, and stored.  Lajoie's testimony was based on Keune's report, and was admitted over Mangos's objection that Keune was the only person who could testify regarding the examination of the clothing and creation of the swabs containing the DNA from the clothing.

[¶ 5]  Erin Miraglivolo, a forensic DNA analyst, also testified that she handled the swabs.  Miraglivolo described the process

---

1.  We are unpersuaded by Mangos's additional argument that the court abused its discretion in sentencing him when it considered evidence regarding uncharged and dismissed criminal conduct in the absence of adequate safeguards to assure the reliability of that evidence.  *See State v. Soucy*, 2006 ME 8, ¶ 16, 890 A.2d 719, 724.

for retrieving the swabs and testified that she analyzed the swabs and compared the DNA on the swabs with the blood sample known to be drawn from Mangos. She testified that all three swabs—one identified as coming from the bandanna, and two identified as being taken from the shirt—contained DNA from at least three people. Miraglivolo determined from her analysis that one in twenty-one people out of the population could be a potential contributor to the mixture of DNA profiles from the bandanna. The likelihood that the DNA from one of the swabs identified as being from the shirt came from someone other than Mangos is one in 95.9 billion. The likelihood that the major DNA profile from the swab identified as being taken from the top of the shirt was from someone other than Mangos is 1.11 trillion. Mangos consistently objected to any testimony regarding the DNA on the swabs. The court overruled the objections and admitted the DNA evidence. The jury returned a verdict of guilty. Mangos appealed.

## II. DISCUSSION

### A. Foundation for the DNA Evidence

■ [¶ 6] Mangos contends that the swabs would be relevant and admissible evidence only if the State demonstrated that they were taken from the items of clothing found near the scene, a fact that Mangos argues was not sufficiently established at trial. He contends that in order to establish a foundation for the admission of DNA evidence at trial, it is necessary to establish that proper scientific methods were followed in creating the DNA on the swabs. The State presented no such evidence based on personal knowledge, and in fact, one witness testified specifically that only Keune could testify as to whether the correct scientific method was used in creating the swabs.

■ [¶ 7] We review a trial court's relevancy determination for clear error. *State v. Dilley*, 2008 ME 5, ¶ 25, 938 A.2d 804, 809. "This standard of review is similar to a sufficiency of the evidence standard in that it asks if the trial court's ruling on evidentiary foundation is supported by or not inconsistent with the facts that appear in the record." *Id.* (quotation marks omitted).

[¶ 8] Here, the evidence established that Keune received the articles of clothing, and that ultimately the swabs containing DNA were delivered to Miraglivolo. The evidence also established the general practices used to create the swabs. The only way, however, that the court could conclude that the DNA evidence presented at trial came from the clothing found near the scene of the robbery, and thus was relevant, was for the court to infer that Keune properly created the DNA swabs by taking them from those articles of clothing. Such a substantial factual gap between the receipt by Keune of the clothing and the testing by Miraglivolo reflects more than a minor break in the chain of custody. *See State v. Drewry*, 2008 ME 76, ¶ 29, 946 A.2d 981, 990 (quoting *State v. Lobozzo*, 1998 ME 228, ¶ 10, 719 A.2d 108, 110 (stating "a minor break in the chain of custody may affect the weight that is assigned to evidence but does not affect its admissibility")). Keune's failure to testify created a complete break in the chain of custody of the DNA evidence, and requires reliance on hearsay evidence to conclude that the DNA swabs were properly taken from the clothing found near the scene of the robbery. At issue is the necessity of a proper foundation for the admission of crucial evidence. Keune did not testify. No one witnessed Keune remove DNA material from the clothing to create the evidence testified to at trial. Miraglivolo did not personally know how, or from what, the swabs had been created. Keune's testimo-

ny, or that of a direct witness to Keune's treatment of the material, was needed to establish the foundation for the admission of the DNA evidence, and its admission in the absence of that foundation was clear error.

## B. Right to Confront Witnesses

[¶ 9] Mangos also argues that his Sixth Amendment right to confront witnesses was violated when the court allowed Lajoie, Keune's supervisor, to testify that Keune had examined the t-shirt and bandanna and created the swabs from those items, even though Lajoie lacked personal knowledge.

[¶ 10] The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. Similarly, the Maine Constitution guarantees that "[i]n all criminal prosecutions, the accused shall have a right ... [t]o be confronted by the witnesses against [him]." Me. Const. art. I, § 6.

[¶ 11] In order to satisfy a defendant's confrontation right, when testimonial statements are at issue, the State must prove that the declarant is unavailable and that the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Testimonial evidence includes statements made for the purpose of police investigation. *See Davis v. Washington,* 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

[¶ 12] A criminal defendant's confrontation right often arises when an out-of-court statement is admitted pursuant to a hearsay exception. *See Crawford,* 541

U.S. at 40, 124 S.Ct. 1354; *State v. Gorman,* 2004 ME 90, ¶ 46, 854 A.2d 1164, 1175. Lajoie's testimony was based on Keune's report, which was hearsay, and not admissible pursuant to any exception.

[¶ 13] Keune's statement in her report that she had examined the t-shirt and bandanna and created the swabs from those items is testimonial because she made it in furtherance of a police investigation. Thus, the State must prove Keune's unavailability and that Mangos had a prior opportunity to cross-examine her. The State did not prove either of these, and thus, Mangos's confrontation rights were violated.

## C. Harmless Error Standard

[¶ 14] The State contends that even if there was an error in failing to establish a sufficient foundation for the DNA evidence, or a violation of Mangos's right to confront witnesses against him, any such error or violation was harmless. Under either standard, we cannot say that the error was harmless.

[¶ 15] Maine Rule of Criminal Procedure 52(a) states, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." A preserved non-constitutional error, such as the admission of the DNA evidence here, should be treated as harmless if it is highly probable that the error did not affect the judgment. *State v. Hassapelis,* 620 A.2d 288, 291 n. 4 (Me.1993). In contending that the non-constitutional error in failing to establish a sufficient foundation for the DNA evidence did not affect the judgment, the State argues that the DNA evidence goes to the identity of the robber and that two eyewitnesses identified Mangos as the person who robbed the store. DNA, however, is very powerful evidence, and in this case, it scientifically and definitively linked Mangos to cloth-

ing worn during the robbery. Although two eyewitnesses identified Mangos as the robber at trial and from a photo lineup prior to trial, both witnesses also identified another person as the possible robber when they reviewed the photo lineups. Accordingly, we cannot conclude to a high probability that the admission of the DNA evidence did not affect the judgment.

■ [¶ 16] When there is error implicating a constitutional right in a criminal proceeding, such as the right to confront witnesses, for the error to be considered harmless, the error must be harmless beyond a reasonable doubt. *Hassapelis,* 620 A.2d at 291 n. 4, 293. Keune was the only person who could provide the evidence linking the clothing items with the swabs, and was the only one who could testify that the proper scientific procedures were used in creating the swabs.

[¶ 17] We cannot say to a high probability, much less beyond a reasonable doubt, that the introduction of the powerful DNA evidence conclusively connecting Mangos to the clothing worn by the person who robbed the store did not affect the outcome. Accordingly, the error was not harmless, and the conviction must be vacated.

The entry is:

Judgment vacated. Remanded to the Superior Court for a new trial.