HJELM, J.
[¶ 1] After a jury trial held in February 2011, Mark J. Theriault was convicted of one count of unlawful sexual contact (Class A), 17-A M.R.S. § 255-A(l)(F-l) (2014). Theriault challenged the judgment through a petition for post-conviction review, see 15 M.R.S. § 2122 (2014), alleging that he was denied effective assistance of counsel[1] during the underlying criminal proceeding. The Superior Court (Aroos-took County, Hunter, J.) denied Ther-iault’s petition after a hearing, and we issued á certificate of probable cause, allowing Theriault to appeal the adverse post-conviction judgment. See 15 M.R.S. § 2131(1) (2014); M.R.App. P. 19. Because the court’s decision applied a test for prejudice that did not fully comport with the standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we vacate the post-conviction judgment and remand for reconsideration.
I. BACKGROUND
[¶ 2] We view the record of both the post-conviction proceeding and the underlying criminal action in the light most favorable to the State as the prevailing party. See Lamarre v. State, 2013 ME 110, ¶ 2, 82 A.3d 845. Theriault was indicted in July 2008 ,for unlawful sexual contact committed in March 2008 against a child who, at the time of the Offense, was six years old. Attorney Allan Hanson was appointed to represent Theriault, and the case proceeded to a one-day jury trial in February 2011 (Aroostook County, Hunter, J.). The State presented the testimony of three witnesses: the victim’s sister, a registered nurse who spoke with the victim at a local hospital after the victim’s mother brought her there on the day of the incident, and the victim herself.
[¶ 3] The victim’s sister, who was twenty-two years old at the time of the trial, testified that in March 2008, she lived with the victim and their brother, mother, and stepfather, near Theriault’s residence. On March 14, 2008, Theriault drove her and the .victim to a nearby store, and Theriault invited them back to his house. The sister refused, but the victim went with him. Later in the day, the victim returned home *1166 with wet hair and said that she had taken a bath. When the sister asked about the wet hair, the victim became quiet. That evening, the sister asked if Theriault had seen the victim naked and if Theriault had touched her “down there,” referring to the victim’s genitals. Becoming emotional, the victim said that he had seen her naked and touched her. The sister, who acknowledged that she is not trained to interview children, testified that as she spoke with the victim, she (the sister) first referred to the genital area as “down there,” and first raised the issue of whether the victim and Theriault were naked.
[¶4] The victim’s sister reported the disclosure to their mother, who then drove the victim and the sister to a nearby hospital. The victim and the sister continued to discuss the assault during the ride. At the hospital, the victim was examined by a registered nurse who was trained to assist physicians with primary assessments of sexual assault victims younger than thirteen years old. During the evaluation, the victim told the nurse that after she had taken a bath, Theriault called her into the living room and touched her over her clothing “down there,” which the victim identified by pointing toward her genitals. The nurse examined the victim and found no physical injury resulting from the alleged assault, which, based on the reported nature of the assault, was not unexpected. The nurse ultimately referred the victim for a forensic evaluation at The Spurwink Child Abuse Program, which specializes in pediatric sexual abuse assessments and interviews. No evidence was presented about the Spurwink evaluation.
[¶ 5] The victim then testified that in March 2008, when she was six years old, she went to Theriault’s residence, and, while there, she took a bath. After she got dressed, and while she was using a PlayStation video game, Theriault told her to go into his bedroom, where he removed her clothes, told her to lie down on the bed, and touched her genitals, penetrating her with his fingers.
[¶ 6] Theriault did not present a casein-chief. The jury found him guilty, and at a sentencing hearing held two days later, the court imposed a prison term of sixteen years, with all but eight years suspended, and six years of probation. Attorney Hanson filed a notice of appeal and an application for leave to appeal the sentence. See 15 M.R.S. § 2151 (2014); M.R.App. P. 20. Theriault’s current attorney entered his appearance soon after, and Attorney Hanson withdrew as counsel. We denied Theriault’s application to allow an appeal from sentence, and in August 2011 we dismissed his direct appeal for want of prosecution.
[¶ 7] In August 2012, Theriault filed a petition for post-conviction review, which, as amended in May 2013, alleged that Attorney Hanson failed to provide effective representation during the pretrial and trial proceedings.[1] A trial on the post-conviction petition was held in September 2013, at which Attorney Hanson and Theriault both testified. During the hearing, the court admitted into evidence a report of the psychosocial evidentiary assessment conducted by a licensed clinical social worker at the Spurwink Child Abuse Program. The report states that during the forensic interview of the victim conducted on March 25, 2008, “When asked if somebody had done something to her that she does not like, [the victim] stated, ‘No.’ ” Additionally, the report recites, “When *1167 asked if [Theriault] does something that she does not like, she stated, ‘Hmmm, no.’” According to the report, the victim also initially denied that anything had happened “to her privates.” She then agreed that someone had touched her “privates” and, in response to a series of questions, described at least one incident when Ther-iault sexually assaulted her.
[¶ 8] After the parties submitted post-trial arguments, on March 11, 2014, the court issued a written decision denying the petition, concluding that its “analysis of the prejudice prong is determinative of this petition.” In its order, the court outlined the two-part test that controls claims of ineffective assistance ■ of counsel, which focuses on the quality of trial counsel’s performance and any resulting prejudice. Addressing the issue of prejudice, the court stated generally, “If a post-conviction petitioner proves ineffective assistance, he must also demonstrate that the outcome of the proceedings would have been different but for counsel’s performance.”
[¶ 9] The court then proceeded to address many of Theriault’s specific challenges to the quality of Attorney Hanson’s representation of him, finding in each instance that Theriault had not demonstrated prejudice resulting from Attorney Hanson’s allegedly inadequate representation of him. In a number of its findings, the court framed the issue of prejudice in terms of whether, if Attorney Hanson had performed as Theriault contended he should have, there would have been a different outcome in the criminal trial. The court found, for example, that
• Theriault failed to prove that services of a private investigator, which Attorney Hanson did not secure, “might have produced a different outcome at his trial” or would have made a “difference in the outcome of this case”;
• Theriault did not prove that Attorney Hanson’s failure to consult with an expert on child interview issues “would have produced a different outcome at trial”;
• Theriault did not prove that evidence of Theriault’s character, which Attorney Hanson did not present, “would have made a difference at his trial”;
• Theriault failed to prove that if he had testified, “the outcome of his trial would have been different”;- and
• Theriault did not prove that, with additional information presented at the sentencing hearing, “the court’s sentence might have been different.”[2]
[¶ 10] The court also considered Ther-iault’s claim that Attorney Hanson did not present available evidence that Ther-iault did not have a PlayStation at his house, to impeach the victim’s testimony that she was playing with a PlayStation at his house shortly before he assaulted her. The court rejected this claim, noting that at trial Attorney Hanson presented evidence that the victim told the nurse that Theriault had touched her over her clothing, which was inconsistent with the victim’s trial testimony that she was not wearing clothes at the time of the assault. The court found that because the jury appears to have accepted the victim’s testimony despite her contradictory statements about the incident itself, evidence that Theriault did not have a PlayStation was not “likely to have produced a different result.” In its order, *1168 the court did'not address Theriault’s argument that Attorney Hanson should have presented evidence of the victim’s exculpatory statements made during the Spurwink evaluation to impeach her incul-patoiy trial .testimony.
[¶ 11] Without reaching the question of whether Attorney Hanson’s representation of Theriault was constitutionally deficient, the court denied the petition based on its conclusion that Theriault ■ “has failed to persuade this court that he was actually prejudiced by any' such deficiencies.” Theriault successfully sought leave to appeal the judgment pursuant to 15 M.R.S. § 2131(1) (2014) and M.RApp. P. 19.
II. DISCUSSION
[¶ 12] Because the ■ court denied Theriaulf’s petition for post-conviction review on the sole basis that he had not proved prejudice arising from any constitutional inadequacies in legal representation, the limited issue presented here is whether the court erred in that determination. In appeals from judgments issued in post-conviction' proceedings, we review questions of law de novo and apply a deferential standard of review to factual findings. Roberts v. State, 2014 ME 125, ¶ 21, 103 A.3d 1031.
[¶ 13] As we have recently noted, Strickland is the “seminal case” that establishes the standards controlling the disposition of claims of ineffective assistance of counsel. Manley v. State, 2015 ME 117, ¶ 12, 123 A.3d 219.[3] The federal constitutional guarantee of the right to counsel under the Sixth Amendment extends to the states through the Fourteenth Amendment, Missouri v. Frye, 566 U.S. -, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012), and so the.'Strickland standards govern ineffectiveness claims in state court post-conviction proceedings.
[¶ 14] To prevail in a post-conviction proceeding based on an alleged constitutional deprivation of counsel, the petitioner must demonstrate two points: first, “that counsel’s representation fell below an objective standard of reasonableness,”- and second, that “errors of counsel ... actually had an adverse effect on the defense.” Strickland, 466 U.S. at 688, 693, 104 S.Ct. 2052. These elements of an ineffective assistance case, when proved, constitute ■ a “showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Id. at 687, 104 S.Ct. 2052. It is the second of these two elements that is at issue here;[4]
[¶ 15] We consider in turn Theriault’s alternative arguments that he was presumptively prejudiced by Attorney Han *1169 son’s ineffective representation, and that the court erred in finding that he had not proved actual prejudice.
A. Presumed Prejudice
[¶ 16] Theriault first argues that Attorney Hanson’s representation was so deficient that he is relieved of any burden to prove actual prejudice. Theriault did not advance this argument in the trial court, and so we review it under the obvious error standard. See State v. Dolloff, 2012 ME 130, ¶ 31, 58 A.3d 1032. An error is obvious if it is plain, affects substantial rights, and “seriously affects the fairness and integrity or public reputation of judicial proceedings.” Id. ¶ 35 (quotation marks omitted).
[¶ 17] In cases where counsel’s ineffectiveness amounts to the “constructive denial of the assistance of counsel,” prejudice is “legally presumed” and need not be affirmatively proved. Strickland, 466 U.S. at 692, 104 S.Ct. 2052; see also United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Such cases, however, are “rare,” Laferriere v. State, 1997 ME 169, ¶ 11, 697 A.2d 1301, and occur when there is a “complete denial of counsel” or when “counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing.” Cronic, 466 U.S. at 659, 104 S.Ct. 2039; see also Pineo v. State, 2006 ME 119, ¶ 15, 908 A.2d 632 (holding that under federal jurisprudence, Cronic applies only when “defense counsel utterly fails in defending a client”). See, e.g., Cuyler v. Sullivan, 446 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (prejudice, is presumed when counsel proceeded to represent the accused despite a conflict, of interest); Geders v. United States, 425 U.S. 80, 86, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (prejudice is presumed when a court order prevented a defendant from consulting with trial counsel during an overnight recess between his direct- and cross-examination); Herring v. New York, 422 U.S. 853, 857-64, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (prejudice is presumed when trial counsel was prohibited from making a closing argument). See generally Laferriere, 1997 ME 169, ¶ 11, 697 A.2d 1301.
[¶ 18] Here, the record does not plainly demonstrate that, if Attorney Hanson’s representation of Theriault was ineffective, it fell so far below constitutional standards that it constitutes one of the “rare” situations where Theriault would not be required to prove actual prejudice. Consequently, Theriault' has not shown that the court' committed obvious error by failing to presume the existence of such prejudice to his right to counsel and instead examining the post-conviction record for actual prejudice. Theriault is there-" fore left with the burden of affirmatively proving prejudice. Accordingly, we turn to Theriault’s contention that the court erred when it concluded that Theriault had hot proved actual prejudice.
B.' Actual Prejudice
[¶ 19] When prejudice cannot be presumed in a post-conviction challenge based on ineffective representation, the actual prejudice that a petitioner must prove “is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a proba-, bility sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Although this standard makes reference to a “probability,” which, suggests a quantitative inquiry, Strickland ’s test for demonstrating actual prejudice requires a showing of a “reasonable probability,” which.is defined-as a showing that the alleged ineffectiveness is enough to “undermine confidence in the outcome” of the underlying proceeding. Id. (emphasis added). Put another way, a criminal *1170 defendant is prejudiced by constitutionally ineffective representation when the result of the proceeding is “unreliable.” Id. at 687, 104 S.Ct. 2052. Under Strickland, therefore, the trial court must engage in an analysis that is not quantitative — that is, to determine if prejudice is probable. Rather, the court’s analysis must be qualitative in nature — that is, to determine whether the petitioner has demonstrated that trial counsel’s performance undermines confidence in the outcome of the case and renders that outcome unreliable.
[¶ 20] In Strickland, the Court expressly held that the proper test of a “reasonable probability” is different from an “outcome-determinative” standard, which is the quantitative inquiry that would require proof “that counsel’s deficient conduct more likely than not altered the outcome in the case.” Id. at 693, 104 S.Ct. 2052. In expressly rejecting the different standard of proof contained in the “outcome-determinative” test, id. at 697, 104 S.Ct. 2052 the Court explained that “[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.” Id. at 694, 104 S.Ct. 2052; see also Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (“[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.”); Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir.2001) (holding that the trial court committed error by stating that the petitioner “must demonstrate that but for the unprofessional error, he would not have been found guilty,” even when the court correctly articulated the Strickland prejudice standard elsewhere in its written order (quotation marks omitted)). In those cases, the outcome-determinative test exceeds the burden that a petitioner is required to meet under Strickland’s “reasonable probability” standard and could result in the denial of relief that would otherwise be available under Strickland.
[¶21] In examining the relationship between the “reasonable probability” and “outcome-determinative” standards, it is significant to note that under some circumstances, a petitioner can satisfy the “reasonable probability” test by proving by a preponderance of the evidence that counsel’s deficient representation altered the outcome of the case — in other words, by satisfying the outcome-determinative test. See Williams v. Taylor, 529 U.S. 362, 396-97, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In Williams, the Virginia Supreme Court had vacated the trial court’s judgment granting post-conviction relief based on ineffective assistance of counsel. Id. at 370-71, 120 S.Ct. 1495. The Virginia Supreme Court construed the trial court to have used the outcome-determinative test, which the appellate court found was error. Id. at 371, 397, 120 S.Ct. 1495. The United States Supreme Court reversed the Virginia Supreme Court’s decision and reinstated the trial court’s judgment for the petitioner. Id. at 397-99, 120 S.Ct. 1495. In its analysis, the Supreme Court held that the Virginia appeals court itself erred by concluding that a “mere difference in outcome is not sufficient to establish constitutionally ineffective assistance of counsel.” Id. at 397, 120 S.Ct. 1495 (quotation marks omitted). Thus, Williams held that in that case, where the petitioner had proved that ineffective representation actually determined the outcome of the underlying case, the petitioner also satisfied the “reasonable probability” aspect of the StHckland standard of prejudice.[5] See id. at 397-99, 120 S.Ct. 1495.
*1171 [¶ 22] Significantly for purposes of this case, however, the Williams Court did not hold that a petitioner’s failure to satisfy the outcome-determinative test must lead to a denial of the petition. Where a court imposes the outcome-determinative test and determines that the petitioner has not proved prejudice under that standard, then in effect the court is concluding that the petitioner fell short' of meeting a standard that is higher than the test that should have been applied pursuant to Strickland. In other words, a petitioner’s satisfaction of the outcome-determinative test is often one way to meet the Strickland prejudice standard that is sufficient, but not necessary.
[¶ 23] Controlling federal jurisprudence therefore establishes that the “reasonable probability” standard defined in Strickland and the outcome-determinative test differ in substance and are not coextensive. With these insights into the nature of the “reasonable probability” test, we turn to the court’s determination that Theriault failed to prove that he was prejudiced by any deficiencies in Attorney Hanson’s representation of him.
[¶ 24] Here, the court concluded that Theriault did not prove that any deficiencies in Attorney Hanson’s representation led to “a different outcome” or a “different result,” and that they did not make “a difference.” In its order, the court articulated this standard as an overarching principle it would apply to Theriault’s challenges generally, and it then applied this standard to a number of Theriault’s specific complaints about Attorney Hanson’s work on the case.[6] On this basis, the court denied Theriault’s petition.
[¶ 25] By formulating and applying the prejudice requirement in this way, the court used only a portion of the prejudice standard prescribed in Strickland: it limited its inquiry to the question of whether the outcome of the criminal trial would have been- different absent any ineffectiveness in legal representation. The court, however,.did not go on to apply the remaining aspects of the unitary Strickland prejudice test, -which also requires the court to determine if there is a “reasonable probability” that the ineffectiveness resulted in a..different outcome — meaning, whether ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it. By employing only a portion of the Strickland principle, the court in effect employed the outcome-determinative test rejected in Strickland because it determined, only whether the out *1172 come was likely different than it would have been if the petitioner had been properly represented, ' without considering whether the guilty verdict and resulting conviction were unreliable and not worthy of confidence. 466 U.S. at 693, 104 S.Ct. 2052 (“[A] .defendant need not show that counsel’s deficient conduct more likely than not altered the outcome in the case.”). In this case, the effect of the outcome-determinative standard of prejudice was to impose on Theriault a greater burden than, as a constitutional matter, he was obligated to bear.
[¶ 26] For several of Theriault’s challenges to Attorney Hanson’s conduct, Theriault offered- no evidence whatever of how he was prejudiced by those alleged failures. For example, Theriault did not present any evidence about what information a private investigator might have found to provide an exculpatory explanation for the victim’s accusations. On those points, Theriault failed to demonstrate entitlement to post-conviction relief regardless of how- one might characterize the element of prejudice, because the complete absence of any evidence of prejudice would preclude any prospect of proving that the guilty, verdict was unreliable and not entitled to confidence.
[¶27] On other aspects of Theriault’s claims, however, the court’s assessment of prejudice was necessarily more nuanced. For example, to address Theriault’s claim that Attorney Hanson failed to present evidence that Theriault did not have a PlayStation at his house, the court was required to evaluate the prospective impact of that evidence to impeach the victim’s testimony that she was using that type of game at Theriault’s house on the day of the assault. This assessment-of the evidence was- necessary because, as the court observed, the jury in- fact was presented with other impeachment evidence: during her report of the assault to the nurse, the victim recounted the assault itself in a way that was different than what she described .during her trial testimony, and Theriault presented evidence to the jury that some aspects of the victim’s accusations may have beep influenced by the way her sister elicited information when the victim first disclosed the assault. The court was therefore called to gauge the effect of additional impeachment evidence, even though it may have related to a collateral matter. In doing so, however, the court erroneously employed the outcome-determinative test, and on that basis, rejected Theriault’s argument that Attorney Hanson’s failure to present the evidence about the PlayStation resulted in prejudice.
[¶ 28] Additionally, Theriault argued in the trial court, as he does on appeal,[7] that he was prejudiced by Attorney Hanson’s failure to present any evidence of the prior exculpatory statements made by the victim during the Spurwink evaluation, when she reportedly said that no one — including Theriault — had done anything to her that she did not like, and, more specifically, that Theriault had not sexually assaulted her. The court did not discuss this evidence in its order, and neither -party requested that the court issue findings on the issue. In those circumstances, we ordinarily would infer that a court made factual findings sufficient to support its ultimate conclusion.[8] See State v. Dodd, *1173 503 A.2d 1302, 1307 (Me.1986); Alexander, Maine Appellate Practice § 416(e) at 273 (4th ed.2013). In the specific circumstances of this case, however, the legitimacy of that inference is undermined, because it would attribute to the court the use of a legal principle that it misstated several times in its order.
[¶29] We therefore conclude that in analyzing Theriault’s claim that he was actually prejudiced by Attorney Hanson’s ineffective representation, the court did not fully implement the proper standard of prejudice established in Strickland.
III. CONCLUSION
[¶ 30] We remand this matter for reconsideration of -Theriault’s claims of prejudice based on the Strickland rubric. We recognize the Strickland- Court’s observation . that application of the “reasonable probability’ test rather than the “outcome-determinative test” will “alter the merit of an ineffectiveness claim only in the rarest case.” 466 U.S. at 697, 104 S.Ct. 2052; Manley, 2015 ME 117, ¶ 13, 123 A.3d 219. We cannot, however, substitute our judgment for that of the trial court by presuming to determine whether, under the proper standard, Attorney Hanson’s alleged ineffectiveness resulted in prejudice as that test is prescribed in Strickland. Accordingly, we must remand for reconsideration of Theriault’s claim of prejudice under that standard.[9]
The entry is:
Judgment vacated. Remanded for further proceedings.

. Theriault also attempted to pursue a claim of ineffective assistance of counsel through a motion for new trial. See M.R. Crim. P. 33 (superseded by M.R.U. Crim. P. 33 (effective Jan. 1, 2015)). The court correctly denied the motion, because such a claim must be addressed in a post-conviction proceeding. See State v. Ali, 2011 ME 122, ¶ 20, 32 A.3d 1019.

. Although Theriault’s post-conviction petition alleged deficienciés in Attorney Hanson’s pretrial and trial representation, he presented evidence at the hearing that Attorney Hanson also did not provide effective representation during the sentencing phase of the case, and the court examined that claim. It therefore became part of the basis.for Theriault’s claim for relief.

. In Manley, we reaffirmed that Strickland v. Washington, 466 U.S. 668, 104 S.Ct, 2052, 80 L.Ed.2d 674 (1984), dispositively establishes the criteria in ineffectiveness claims, including the nature of prejudice that the petitioner must establish, despite language in some of our opinions that is not fully consistent with that federal authority. Manley v. State, 2015 ME 117, ¶ 18, 123 A.3d 219.

. Both federal and state law make clear that if a trial court concludes that the petitioner has not proved prejudice resulting from any alleged ineffectiveness, the court is entitled to deny the petition on that basis without reaching the question of whether the petitioner has also proved that ineffectiveness. See, e.g., Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[A] court need not determine whether counsel’s performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.”); Francis v. State, 2007 ME 148, ¶ 6, 938 A.2d 10. Here, the court therefore followed a well-established analytical path by addressing the prejudice prong first but, having determined that issue adversely to Theriault, not reaching his claim of ineffectiveness.

. In two other cases, however, the United States Supreme Court explained that the out *1171 come-determinative test might improperly allow relief where it should not be granted. In one case, where counsel failed to make an objection based on a legal argument that was subsequently discredited, the Court noted that the defendant might have "lost” a meritless opportunity for a more favorable outcome, but the reliability of the criminal proceeding’s outcome is not compromised. Lockhart v. Fretwell, 506 U.S. 364, 367-69, 371-72, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). In the second case, the Supreme Court held that an attorney's decision not to knowingly present false exculpatory evidence did not prejudice the defendant within the meaning of Strickland. Nix v. Whiteside, 475 U.S. 157, 175-76, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Even if the defendant proved that he would have attained a better outcome with perjured testi- - mony, that outcome would not have been reliable. Id. These cases demonstrate that in some circumstances, a petitioner cannot always satisfy the "prejudice” prong of the Strickland standard without addressing whether counsel's conduct undermined the reliability of the proceedings.

. For several of. Theriault’s specific challenges, the court framed the prejudice standard more generally, concluding, for example, that certain deficiencies did not "cause! ] him prejudice" and that Theriault had not "affirmatively demonstrate[ed] prejudice.” As noted in the text, however, the court rejected Theriault’s other challenges based on the outcome-determinative test.

. Both in the trial court and on appeal, Ther-iault has contended that Attorney Hanson failed to cross-examine the victim about her inconsistent'statements and that he did not call other witnesses who could have testified about those inconsistent statements. The réc-ord plainly demonstrates that one such witness is the Spurwink evaluator.

. One way we could make that inference in this case is to consider the form of the evidence of the Spurwink evaluation presented to the court at the post-conviction hearing, *1173 which was a report written by the LCSW who conducted the evaluation. The evaluator herself did not testify at the post-conviction hearing, and Theriault did not establish the foundation that would be necessary for admission into evidence of the report itself, which is hearsay, see M.R. Evid. 801-803. The'report, however, was admitted into evidence at the post-conviction hearing without objection; neither party has suggested that the information in the report could not have been presented in admissible form at trial; and the State has not argued that Theriault’s prejudice argument fails on this basis. Under these circumstances, we conclude that the manner in which evidence of the Spurwink evaluation was presented to the court is not a reason to reject Theriault's argument that he was prejudiced by Attorney Hanson’s failure to present it at the criminal trial. .

. The First Circuit has suggested that in evaluating claims of ineffectiveness arising from trial counsel’s failure to present evidence to impeach witnesses who provide incriminating testimony, the court may consider factors such as the strength of the State’s case, the effectiveness of the actual defense presentation, and the significance of the impeachment value of- evidence that trial counsel failed to develop. Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir.2001).
We further note that on remand, if the court concludes that Theriault has proved that under Strickland, he was prejudiced by alleged deficiencies in Attorney Hanson’s representation of him, the court will also be required to consider whether Theriault has further proved that that representation in fact fell below constitutional standards.