ALEXANDER, J.,
with whom, JABAR, J., joins, concurring in part and dissenting in part.
[¶ 35] I concur in the Court’s opinion addressing the jeopardy order; its analysis of the law regarding the statutory “presumption” arising from an aggravating factor, 22 M.R.S. § 4055(1~A)(A), (B)(3) (2016); and its analysis of the evidence in this case, where the facts regarding the parents’ prior history of dangerousness to children and their current concerning views about their capacity to parent children are not particularly close.
[¶ 36] I respectfully dissent only from the Court’s remand to the trial court for further findings regarding application of the statutory presumption and effectiveness of trial counsel. As the Court observes, addressing parents’ due process rights, “the [trial] court must be careful, in protecting that right, not to ignore the simultaneous interest of the State in promoting ‘the early establishment of permanent plans’ for the children.” Court’s Opinion ¶ 19 (quoting 22 M.R.S. § 4003(4) (2016)). Delaying finality and permanency for these children pending further findings on remand is neither necessary nor in the best interests of the children.
[¶ 37] Without requiring further findings, I would simply vacate and remand with direction to reinstate the termination of parental rights judgment and move on to the question of permanent placement, without further delay.
[¶ 38] We have not developed a significant body of precedent addressing application of the statutory presumption in cases where a parent, opposing termination of parental rights, has previously been convicted,-after trial, of causing'a child’s death or serious bodily injury. Nor have we frequently addressed issues of ineffective assistance of counsel in cases of termination of parental rights.
A. Statutory Presumption or Constitutionally Required Inference
.[¶39] A trial court ruling, even if in error, will not result in vacating the judgr ment if the error was “harmless”—that -is, if the error did not result in substantial injustice or affect substantial rights. See *925 M.R. Civ. P. 61; M.R.U. Crim. P. 52(a); see also M.R. Evid. 103(a).
[¶ 40] A properly preserved error that is not of constitutional dimension is harmless “if it is highly probable that the error did not affect the judgment.” State v. Guyette, 2012 ME 9, ¶ 19, 36 A.3d 916; see also In re Scott S., 2001 ME 114, ¶¶ 24-25, 775 A.2d 1144; Williams v. United States, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). In criminal cases, with constitutional protections equal to or greater than those applicable to the termination of parental rights case at issue here, the State has the burden of persuasion on appeal to demonstrate that an error was harmless. State v. Dolloff, 2012 ME 130, ¶ 34, 58 A.3d 1032; see also United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The essential question is whether it is highly probable that any error did not affect the trial court or jury decision. State v. Mangos, 2008 ME 150, ¶ 15, 957 A.2d 89.
[¶ 41] The Court correctly notes that the presumptive error at issue here affected the parents’ constitutional rights. An error in a criminal case that affects constitutional rights can be subject to harmless error analysis. Washington v. Recuenco, 548 U.S. 212, 218, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). In Recuenco, the Supreme Court held that if a defendant had counsel and was tried by an impartial adjudicator, “there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.” Id.; see also Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying harmless error analysis when a jury was not instructed on one essential but undisputed element of a crime).
[¶ 42] The appropriate harmless error inquiry on an issue of constitutional rights in a termination of parental rights case is whether, upon review of the whole record, we are satisfied that “it is highly probably that the error did not prejudice the parents or contribute to the result in the case. The State’s burden of persuasion is high. Any doubt will be resolved in favor of the parent.” In re Scott S., 2001 ME 114, ¶ 29, 775 A.2d 1144. Here, it is apparent, without any doubt, that the trial court’s erroneous application of a burden-shifting presumption analysis, rather than the constitutionally required inference analysis, to find aggravating factors based on the parents’ prior convictions for causing death or serious bodily injury to a child did not contribute to the final decision terminating parental rights. The parents’ prior convictions and their continued claims of lack of responsibility for the death of their first child compelled the result reached by the trial court, even if the inference analysis, leaving the burden of persuasion on the State, had been properly applied.
B. Effective Assistance of Counsel
[¶ 43] The standard for post-conviction review of claims of ineffective assistance of trial counsel—the most common post-conviction review issue—has been stated in Strickland v. Washington, 466 U.S. 668, 687-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[¶ 44] In Theriault v. State, 2015 ME 137, ¶ 13, 125 A.3d 1163, we recognized that “Strickland is the ‘seminal case’ that establishes the standards controlling the disposition of claims of ineffective assistance of counsel.” (quoting Manley v. State, 2015 ME 117, ¶ 12, 123 A.3d 219). Referencing Manley, we noted that “we reaffirmed that [Strickland ] dispositively establishes the criteria in ineffectiveness claims, including the nature of prejudice that the petitioner must establish, despite language in some of our opinions that is *926 not fully consistent with that federal authority.” Theriault, 2015 ME 137, ¶ 13 n.3, 125 A.3d 1163.
[¶ 45] Thus, in Theriault, we adopted the Strickland standard that to demonstrate ineffective assistance of counsel sufficient to overturn a judgment on post-conviction review “the petitioner must demonstrate two points: first, ‘that counsel’s representation fell below an objective standard of reasonableness,’ and second, that ‘errors of counsel ... actually had an adverse effect on the defense.’ ” Id. ¶ 14 (quoting Strickland, 466 U.S. at 688, 693, 104 S.Ct. 2052).
[¶ 46] Here, the Court accurately points out that the parents had been convicted of crimes—manslaughter for the mother, felony assault on a child under six years of age for the father—that resulted in the violent death of their first child, a child whom they had adopted. Despite those prior convictions, counsel for the parents succeeded in convincing the trial court in the jeopardy proceeding to allow the parents to relitigate the cause of the death of their first child. In the jeopardy proceeding, the parents, testifying under oath, refused to accept any responsibility for the death of their first child, focusing instead on their anger toward the legal system.
[¶ 47] The parents’ ineffective assistance claim appears to place blame on counsel for the tactical choice in the jeopardy proceeding to contest, rather than concede, jeopardy when, with the concession, the parents could have received parenting assistance services and perhaps visitation with the twins after receiving services. However, from the available record it is evident that it was the pai-ents, not counsel, who refused to accept their already decided responsibility for the death of their first child. See State v. Allen, 2006 ME 21, 892 A.2d 456; State v. Allen, 2006 ME 20, 892 A.2d 447.
[¶ 48] No ineffective assistance of counsel is demonstrated by counsel’s tactical choice, evidently based on their clients’ wishes, to litigate the jeopardy issue. The record does reflect that the parents were advised of the State’s proposal to avoid the jeopardy proceeding and rejected it, choosing to litigate instead. Second-guessing counsel’s tactical choices after an unfavorable result is a frequent but rarely successful ploy in post-conviction proceedings. Recognizing this, the Strickland court observed:
It is all too tempting for a defendant to second guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.
466 U.S. at 689, 104 S.Ct. 2052.
[¶ 49] To counter this tendency, Strickland holds:
Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
[¶ 50] Theriault, reflecting Strickland, holds that to overcome this presumption and succeed in vacating a judgment in a post-judgment proceeding asserting ineffective assistance of counsel, a challenger must meet the burden of demonstrating (1) that counsel’s representation fell below an objective standard of reasonableness; and (2) that errors of counsel actually had an adverse effect on the defense. 2015 ME 137, ¶ 14, 125 A.3d 1163.
*927 [¶ 51] Here, no ineffectiveness of counsel is demonstrated in the tactical choices about which the parents complain, and even if ineffectiveness were demonstrated, the 'parents, causing the tragic death of their first child and refusing to acknowledge any responsibility for their child’s death, make the end result, termination of their parental rights, inevitable—so any incompetence of counsel could not have any adverse effect on their defense in these proceedings.
[¶52] The parents cannot meet their burden to demonstrate that errors of counsel, if any, had any adverse effect on their defense of the proceedings or could have affected the ultimate result. There are no facts left for the District Court to adjudicate. The matter should be remanded only to reinstate the termination of parental rights judgment and let the children get on with their lives.