STATE OF MAINE
AROOSTOOK, ss

MLR/SC # 109-21
11/20/20
need
Atty
info

SUPERIOR COURT
DOCKET NO. AROCD-CR-18-30007
18-30346
18-30530

MATTHEW PERRY )
Petitioner )
*John Tebbetts for Pet.* )
)
vs )                    DECISION
)
)
)
)
STATE OF MAINE )
Respondent )
*Kurt Kafferlin and James Mitchell for State* )

BACKGROUND

Pending before the court is Matthew Perry's (hereafter Perry) Petition for Post-Conviction Review. In 2018 Perry was charged by three indictments, to wit:

1. Indictment dated April 12, 2018 (CR-18-30007) charging Perry with: Count 1-Aggravating Trafficking in Scheduled Drugs, Class A; Count 2- Aggravating Trafficking in Scheduled Drugs, Class A; Count 3- Unlawful Possession of Scheduled Drugs, Class C

2. Indictment dated September 14, 2018 (CR-18- 30346) charging Perry with: Count 1-Aggravating Trafficking in Scheduled Drugs, Class A; Count 2- Aggravating Trafficking in Scheduled Drugs, Class A ; and Count 3-Illegal Importation of Scheduled Drugs, Class B.

3. Indictment dated December 6, 2018 (CR-18-30530) charging Perry with Violation of Condition of Release, Class C.

1

Attorney Michelle Kenney was initially assigned to represent Perry. But in September, 2018 Attorney Kenney moved to withdraw and Attorney Tebbetts was assigned. Dispositional conference was held on the various dockets, and the earliest case, Docket No. CR-18-30007, was assigned to docket call in November, 2018. All of the cases were then set for a Rule 11 plea hearing.

On February 4, 2019 a Rule 11 proceeding was held on all three dockets. Although there was no agreement on the sentence, there was an agreement Perry would be plead guilty on an open plea to one Class A Aggravating Trafficking charge on Docket CR- 18-30346, and one Class A would be dismissed, and on Docket CR-18-30007 the two Class A's would be amended to Class B's, with guilty pleas to be made on the remaining charges. In summary, Perry plead guilty, to wit:

1. CR-18-30007- Counts 1 and 2 amended by agreement to Class B's, with pleas of guilty to all three Counts 1, 2 and 3 as amended.

2. CR-18-30346- guilty to Counts 2 and 3, and the State dismissed Count 1.

3. CR-18-30530- guilty to Count 1 as plead.

As stated, Perry's plea of guilty to all of these counts was open. Prior to the Rule 11 hearing and sentencing, Perry's attorney submitted for the court's review a sentencing memorandum and additional arguments were made by counsel at the hearing. At the plea and sentencing hearing Perry's counsel introduced into evidence a spread sheet of comparable sentences, a letter from treatment psychiatrist James Fine, MD, Certificate of Completion of Breaking Free and Re-Entry Workshop, and a letter from Perry addressed to District Attorney Collins.

Following the hearing the court sentenced Perry as follows, with CR-18-30346 being the lead docket:

1. CR- 18-30346

   Count 2- 17 years to DOC, with all but 9 years suspended, with 4 years of probation

   Count 3- 9 years, concurrent with Count 1

   Fines and surcharges totaling $1870.00

2. CR- 18-30007

   Count 1-9 years, concurrent with CR- 18-30346

   Count 2- 9 years, concurrent

   Count 3- 2 years, concurrent

   Fines and surcharges totaling $1665.00

3. CR-18-30530

   Count 1- 1 year, concurrent with CR-18-30346

   Fines and surcharges totaling 35.00

Perry timely appealed all three dockets and sentences to the Supreme Judicial Court. On Perry's motion, his direct appeal was dismissed on April 25, 2019. On May 24, 2019 Perry's leave to appeal from the sentences was also denied. On September 17, 2019 Perry filed with the court a Petition for Post- Conviction Review alleging ineffective assistance of counsel. On January 27, 2020 Perry's post-conviction counsel filed with the court an Amended Petition again claiming ineffective assistance of counsel, more precisely asserting counsel was ineffective in

not zealously engaging in plea negotiations and failed to properly prepare and argue issues at the sentencing, including disparities in sentencing due to race. The relief sought by Perry is to reverse the sentence imposed by the court and have a resentencing.

Hearing on the petition was held on August 27, 2020. Testimony was received from Attorney Tebbetts. Also received by agreement after the hearing was a spreadsheet showing conviction and sentencing data for Black Americans. Also, part of the record is the transcript of the Plea/Rule 11 proceeding. (References to as Tr. p.___,l.___)

STANDARD OF REVIEW

Claims of ineffective assistance of counsel raised on post-conviction review are governed by the two -part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Applying that test, a petitioner bears the burden, at the post-conviction trial, of proving the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation resulted in prejudice. *Philbrook v. State,* 2017 ME 162, ¶ 6.

As to the first prong of the test, counsel's representation falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney. *Philbrook,* ¶ 7. Judicial inquiry into the effectiveness is highly deferential, and the post-conviction court must make every effort to eliminate the distorting effects of hindsight. *Id.* In *Roberts v. State of Maine*, 2014 ME 125, ¶23,103 A.3d 1031,1039, the Law Court indicated that in order to prove that counsel's performance was constitutionally deficient,

"a defendant must show that counsel's representation fell below an objective standard of reasonableness. The question is whether the counsel's performance fell within the wide

4

range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." (Internal citations and punctuation omitted.)

In the context of a plea the requirement of effective assistance of counsel is to ensure that the advice of counsel is within the realm of an ordinary competent attorney because the voluntariness of the plea hinges upon whether the advice is that of an ordinary competent attorney. *Aldus v. State,* 2000 ME 47, ¶15. The inquiry is whether the plea proceeding produced a just result which is "the knowing and voluntary entry of a guilty plea by a guilty party." *Id.*

As to the second prong, whether prejudice is established, a petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, meaning that the ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it. *Philbrook,* ¶ 8; citing *Theriault v. State,* 2015 ME 137, ¶¶ 19, 25. A conviction may be unreliable and not worthy of confidence, thus satisfying the reasonable probability test, even without proof that a different outcome was "more likely than not", as the now superseded "outcome determinative" test would require. *Id.* The "reasonable probability" test is different from an "outcome-determinative" standard, which is the quantitative inquiry that would require proof "that counsel's deficient conduct more likely than not altered the outcome in the case." *Theriault,* ¶20. Rather, the court's analysis must be qualitative in nature-that is to determine whether the petitioner has demonstrated that trial counsel's performance undermines confidence in the outcome of the case and renders that outcome unreliable. *Theriault,* ¶19. "..the result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors

of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Theriault,* ¶20, citing *Strickland,* 466 U.S., at 694.

## DISCUSSION

The argument being made by Perry is that counsel was ineffective as he failed to present at sentencing evidence of the disparity of convictions and sentences suffered by Black Americans. Perry is a Black American. The court does not dispute that the data shows a disparity of conviction rates and sentences for drug related offenses for Black Americans as compared to Caucasians. And the court agrees that this disparity must be considered by the criminal justice system as part of the larger social issue of racial inequality. But merely because Perry's counsel did not directly raise this disparity at the sentencing hearing does not mean his representation and performance was defective.

At hearing, Perry's plea and sentencing counsel concedes he did not raise race or sentencing disparities at the sentencing. But counsel did testify he was aware of the disparity and reflected upon whether, and if so, how, it be raised. Counsel explained that the Assistant District Attorney ("ADA") representing the State demanded a very lengthy sentence for a negotiated plea. Counsel explained that this was normal for this particular ADA, but he did not believe the ADA's position was driven by race. Counsel explained this was unfortunately normal plea negotiations for this ADA in all drug cases. Counsel believed the ADA's ask was excessive, which is why he advised Perry to make open pleas, knowing the ADA would, and in fact did, ask for an even higher sentence at the sentencing hearing. But through all of the pre-sentencing

discussions with the ADA, counsel never believed the ADA's position was driven by race. So, although counsel was aware sentencing disparity by race existed, he could not think of a way to present it without it suggesting that the ADA, or even the court, was racist. On the other hand, although counsel never raised racial disparity, Perry concedes the record of the plea and sentencing hearing contains no direct evidence of racial bias. The court does not agree with Perry's assertion that counsel's inability to think of a way to address race means his representation was ineffective.

As previously stated, "a defendant must show that counsel's representation fell below an objective standard of reasonableness". The question is whether the counsel's performance fell within the wide range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." *Roberts v. State of Maine,* 2014 ME 125, ¶23,103 A.3d 1031,1039. In this case, counsel was aware that disparities in sentences by race exists, but he did not believe race was a motivation in the sentence being sought by the ADA or in the sentencing process. He therefore was unable to determine an effective way to raise it. The court finds that counsel's performance did not fall below an objective standard of reasonableness. To find otherwise would imply that counsel would be obligated to raise racial disparity in every case even when there is neither evidence of racial bias in that particular case nor a strategic reason to raise it. Although the court completely agrees that everyone involved in the criminal justice system must be aware of and consider racial bias and disparities, as counsel was here, and take appropriate action to prevent it, the court does not believe it must automatically be raised in every case.

Going a step further, assuming counsel's performance was deficient, Perry's petition must still fail. As previously stated, in the second prong of the *Strickland* test, whether prejudice is established, a petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, meaning that the ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it. *Philbrook,* ¶ 8; citing *Theriault v. State,* 2015 ME 137, ¶¶ 19, 25. Although not directly stated by anyone at the plea and sentencing, the court knew Perry was Black American. The indictments indicate his race, and the court met and had opportunity to observe Perry during the proceedings. And, in February, 2019, when this sentencing was held, anyone involved in the criminal justice system would have some general awareness of disparities in conviction rates and sentences for Black Americans compared to Caucasions. Racial bias is a social justice issue that has been raised by our society for some time now, although the evidence continues to grow and there remains much work to do. But, reviewing the factors considered by the court when conducting the Hewey Analysis and setting a sentence, there is nothing to suggest the sentence would have been different if Perry was white.

The predominant facts considered by the court in reaching its sentence were: the drugs being trafficked were methamphetamine and fentanyl; the methamphetamine was acquired by Perry from the southwest region of the United States to be sold here; the amount of methamphetamine involved was just under 400 grams, nearly four times the amount to be classified as a Class A; Perry's lengthy criminal record, including probation violations; these crimes committed soon after Perry's release from prison for a prior conviction; Perry's age and his being young; and the fact he cooperated and debriefed. See Tr. pp.69-81. This does not in way mean that the court is now saying the sentence it imposed back in February, 2019 was

perfect, or that another judge might not have rendered a different, or even lower sentence. But it is pure speculation to suggest that had counsel raised the issue of sentencing disparity for Black Americans, the court would have rendered a lower sentence. But more importantly to the required legal analysis, there is no evidence that counsel's failure to raise race undermines confidence in the proceedings. The court knew Perry's race at the time of sentencing, and racial disparities and bias are social issues known to anyone involved in the criminal justice system. From a qualitative analysis, counsel not raising racial bias and disparity does not undermine confidence in the outcome of the sentence or render it unreliable. *Theriault,* ¶19.

Again, the court does not condone the racial bias and disparity that exists in our society. There is a tremendous amount of work to be done by all of us. And having the discussion in this case at a minimum helps to advance the conversation generally about racial bias. But the court does not find that racial bias or disparity undermines the confidence in the outcome of this case, or that counsel's performance fell below an objective standard of reasonableness by his not addressing it.

The order of the court is: Petitioner Matthew Perry's Petition for Post-Conviction Review is DENIED.

Dated: _November 20_, 2020

_____
Justice, Superior Court