STATE of Maine

v.

Charles Peter DYER.

Supreme Judicial Court of Maine.

April 4, 1977.

See also, Me., 371 A.2d 1086.

Vernon I. Arey, Asst. Atty. Gen., Augusta, Henry N. Berry, III, Dist. Atty., Portland, for plaintiff.

Cushman D. Anthony, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

Following pleas of not guilty and not guilty by reason of mental disease or defect to an indictment charging him with the crime of attempted escape from the Cumberland County jail pursuant to former 17 M.R.S.A., § 1405,[1] the defendant, Charles Peter Dyer, was convicted of the charge by a Cumberland County jury. Sentenced to a term of not less than one year and not more than seven years in Maine State Prison, Dyer appealed to this Court. We deny his appeal.

### Limitation of jury voir dire

During the voir dire examination of the jury by the presiding Justice, counsel for the defendant sought to have the Justice inquire from the jury if any of them believed that a criminal act could be the result of mental disease or defect. The Court

---

\* Mr. Justice WEATHERBEE sat at oral argument and participated in conference, but died before this opinion was adopted.

1. Repealed. P.L.1975, c. 499, § 7, effective May 1, 1976.

refused to do so, informing the defendant's counsel that he would inquire from the jury whether or not they would accept the law as given to them by the Court respecting criminal responsibility as a result of mental disease or defect. Asked to put the desired question in writing, counsel submitted the following:

[Whether any of the jurors has] "any preconceived notions or attitudes that dictate a criminal act cannot be *prior to* mental disease or defect." (Emphasis supplied)

The Court refused to inquire "in this particular form" and noted counsel's objection to the refusal to do so.

Notwithstanding the fact the thrust of the defendant's request most probably was, as conceded by the State, an intended inquiry of the jurors concerning any preconceived notion that a criminal act could not be the product of a mental disease or defect, the Justice's examination of the jury respecting their views on the defense of mental disease or defect was thereafter more than adequate to cover the area with which defense counsel was concerned, to which no further objections were lodged.

■ Thus, even if we assume that the defendant's intended inquiry on jury voir dire was proper and that the Court should have posed to the jury the proffered question in the form everyone including the Court understood would carry out the defendant's objective, the defendant would not be entitled to a reversal in the instant case, because he failed to reassert his objection following the Court's full exploration of the defendant's suggested subject of inquiry with the jury.

By tacitly accepting the Court's subsequent elaborate voir dire of the jury upon the very subject matter of his previously requested area of inquiry, the defendant did not preserve the issue for appellate review. Under Rule 24, M.R.Crim.P. the defendant was entitled to have additional questions addressed to prospective jurors only if the subject of inquiry *had not been fully covered* in the court's examination and was germane to the juror's qualifications.

■ Pursuant to Rule 30(b), M.R.Crim.P. a party must renew his objection to a charge which omits seasonably submitted requested instructions under the pains of losing the issue as an appropriate subject of appellate review, except in the manifest error rule context. See *State v. Thibodeau*, 1976, Me., 353 A.2d 595, 605; *State v. Boisvert*, 1967, Me., 236 A.2d 419, 422.

In *State v. Gagne*, 1975, Me., 349 A.2d 193, this Court ruled that the defendants' contention to the effect they could not be tried both for charges of high and aggravated assault and robbery arising out of a single set of circumstances was not saved as an issue on appeal, where they did not resurrect the issue by timely objection to the charge, even though the point had been raised prior to the empanelling of the jury.

In *State v. Weeks*, 1970, Me., 270 A.2d 366, the clerk at the beginning of the trial partially read to the jury from a wrong indictment pending against the defendant. Weeks sought a reversal of his conviction on the ground that it was error for the trial judge not to instruct the jury to disregard the partial reading of the wrong indictment. Even though the defendant had not requested such an instruction at the end of the charge, he argued that the issue was, nevertheless, saved for appellate review, because it had originally been raised by a motion for mistrial immediately upon the clerk's mistake. This Court held otherwise.

In the instant case, the defendant's counsel advised the Court that the jury as finally drawn was satisfactory, and this without equivocation. From this record, the defendant has failed to demonstrate reversible error as a result of the conduct of voir dire examination in the selection of the jury.

*Failure to give requested instruction*

As a second point on appeal, the defendant contends that it was reversible error for the Court below to refuse the following requested instruction:

"If you should find the Defendant not guilty by reason of mental disease · or

defect, the law provides that the Defendant is automatically committed to Augusta State Hospital for treatment, pursuant to Maine statutory law."

■ This same issue was raised in *State v. Park*, 1963, 159 Me. 328, 336, 193 A.2d 1, 5 and decided against the defendant's present contention. We said in *Park*:

"It has long been the settled practice in our State that the function of the jury is to find the facts and to apply the law as given by the Court to the facts in reaching their verdict. Punishment, *or whatever may transpire after the verdict,* is not the concern of the jury." (Emphasis supplied)

In *Park,* we expressly stated that we were not convinced that there was any sound reason for altering our practice, recognizing that a minority of jurisdictions following the lead of *Lyles v. United States,* 1957, 103 U.S.App.D.C. 22, 254 F.2d 725, 728, did reach a different conclusion. See also *People v. Cole,* 1969, 382 Mich. 695, 172 N.W.2d 354; *Schade v. State,* 1973, Alaska, 512 P.2d 907, 918; *Commonwealth v. Mutina,* 1975, 366 Mass. 810, 323 N.E.2d 294, 302.

We reaffirmed our holding in *Park* as recently as in 1975. *State v. Wallace,* 1975, Me., 333 A.2d 72. We see no reason to depart therefrom. In *Wallace,* we stated that, if it were proper to inform the jury that commitment to a mental institution results from a verdict of not guilty by reason of insanity, it would be equally appropriate that the jury be instructed concerning the statutory circumstances under which the defendant's future tenure in the institution could be terminated. Such instruction, we said, would substitute one unacceptable area of speculation and conjecture for another. *Garrett v. State,* 1974, Del., 320 A.2d 745, 750.

The defendant takes nothing from this claim of error.

*Pre-Sentence Investigation and Report*

■ Although no formal motion was presented to the Court for a pre-sentence investigation and report by the State Board of Probation and Parole before the imposition of sentence in the instant case (see suggestion in 3 Maine Practice, Glassman, § 32.4, at page 250), the defendant contends that it was reversible error for the Justice below to impose sentence without it. We disagree.

Assuming that the pre-sentence investigation request had been properly addressed to the Court, the defendant on this record has failed to show an abuse of discretion. Rule 32(c), M.R.Crim.P. expressly authorizes such pre-sentence investigation and report by the State Board of Probation and Parole before sentence *in the discretion of* the court.

■ Judicial discretion implies that, in the absence of positive law or fixed rule, the justice is to decide the question before him by his view of expediency, or of the demands of equity and justice. *Sevigny v. City of Biddeford,* 1975, Me., 344 A.2d 34, 38.

The chief test as to what is or is not a proper exercise of judicial discretion is whether in a given case it is in furtherance of justice. Proper judicial discretion is that which is guided and controlled, in the light of the facts and circumstances of each particular case, by the law and justice of the case, subject only to such rules of public policy as may have been established for the common good. *York & Cumberland Railroad Co. v. Clark,* 1858, 45 Me. 151, 154; *Charlesworth v. American Express Company,* 1918, 117 Me. 219, 221, 103 A. 358; *In Re Wagner's Petition,* 1959, 155 Me. 257, 269, 153 A.2d 619, 626.

■ As stated in *Preuss v. McWilliams,* 1967, 141 Ind.App. 602, 230 N.E.2d 789, 792:

"The term 'discretion' implies the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances. 'Discretion' of a court is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable. Thus, judicial action which involves discretion is final and cannot be set aside on appeal except when there is an abuse of

discretion. Such judicial action must be examined and confined to the issues of the particular case."

The object of Rule 32(c), M.R.Crim.P. in making available to the court in its discretion investigations and reports by the State Probation and Parole personnel prior to the passing of sentence in a criminal case is to bring to the attention of the court factual information about the convicted person as may assist the court in performing one of the most difficult and trying tasks a court is called upon to perform.

Fixing the extent of punishment for crime within the conceptual range of the protection of society and the rehabilitation of the defendant has been lodged in the trial courts. The trial judge is entrusted with the heavy responsibility of making an individualized judgment, without the help of any definite scientific or philosophical formula presently available, except that he may, by the use of Rule 32(c), M.R.Crim.P., obtain helpful information through an inquiry into all of the facts and circumstances surrounding the offense itself, whether in aggravation or mitigation, and be advised on other matters concerning the person to be sentenced including his background, the environment from which he comes, his past behavioral pattern of conduct showing his inclinations or tendencies and his mental approach to societal problems.

Without deciding whether in any case the complete absence of such data by reason of the non-exercise of the Rule 32(c) privilege would rise to an abuse of discretion on the part of the sentencing judge, the Justice below in the instant case at the time of passing sentence had as complete a picture of all the circumstances surrounding the offense and the defendant as an investigation by the State Probation and Parole Board would have produced. He was fully aware of the defendant's mental condition by reason of having heard the testimony of the experts at trial. He was given all the information he needed respecting the defendant's prior behavioral pattern by an extended colloquy with the defendant himself. The instant record disproves any abuse of judicial discretion.

*Defendant's competency at the sentencing stage*

The defendant contends in his motion for revision of sentence pursuant to Rule 35(a), M.R.Crim.P.[2] that, due

—to the fact that he [Dyer] was in bad psychological shape on that Monday morning,—

it was illegal and improper to pass sentence upon him at that time and that its denial was reversible error. This motion was filed on March 22, 1973, three days following the sentencing proceeding and was the first time the defendant's contemporaneous competency to be tried and sentenced was alluded to.

The jury convicted Mr. Dyer on March 16, 1973. The case was then continued for sentence to the following Monday, March 19, 1973 at which time the presiding Justice fully inquired of the defendant himself and received complete information respecting his family background, his education and his previous brushes with the law. Dyer disclosed to the Court his receiving shock treatments at the New Hampshire State Hospital and the South Florida State Hospital. When allowed by the Court to say what he wanted to say, Dyer informed the Court that he had been a mental patient all his life, that he was classified by the experts as of the schizophrenic paranoid type. He argued with the Justice that his mental condition was a permanent one. He further asserted that at the Maine State Prison the care and treatment provided for prisoners who show any signs of mental illness was solitary confinement, which, he said, produced severe mental anguish and

**2.** Rule 35(a), provides as follows:

*Correction and Revision of Sentence.* The justice who imposed sentence may revise a sentence prior to the commencement of execution thereof and may correct an illegal sentence or a sentence imposed in an illegal manner within sixty days after the sentence is imposed, or within sixty days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal.

was cruelty he could not allow to happen to him. When he realized that the presiding Justice would not continue the case for sentence, Dyer reached into his pocket, pulled out a white envelope apparently containing a flammable substance and set himself on fire. The flames were extinguished. The defendant was handcuffed and placed in a stretcher. The Court then proceeded to pass sentence while the defendant lay on the stretcher with his eyes in a closed position.

■ Sentencing of a criminally convicted person while that person is legally incompetent would be in violation of his constitutional rights of due process. *Thursby v. State,* 1966, Me., 223 A.2d 61 at p. 66.

Article 1, section 6, of the Constitution of Maine, provides that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election." If at the time of the sentencing the defendant was afflicted with such mental incompetence as rendered him incapable of rational as well as factual understanding of the nature and purpose of the proceedings at hand, he could not necessarily be heard by himself as provided by the Constitution at a critical stage of a criminal prosecution against him.

■ Indeed, the sentencing process opens up a most critical moment in a criminal case. The impact of the judicial proceeding at that point is as great if not greater than the vital concern which attaches to the trial itself, in that the criminal defendant is then faced with the more immediate consequences affecting his substantial rights, such as the potential loss of his liberty for a stay behind bars away from his family and friends. It is necessary that the defendant have sufficient mental competency to communicate in a significant way with his lawyer and the court so that, prior to sentence, facts may be marshaled and evidence may be given of mitigating circumstances in aid to the presiding justice in his exercise of discretion in the passing of sentence. See also Rule 32(a), M.R.Crim.P.

■ Sentencing is a critical stage of a criminal prosecution. See, *Mempa v. Rhay,* 1967, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336; *People v. Dismore,* 1975, 33 Ill.App.3d 495, 342 N.E.2d 151; *von Lusch v. State,* 1976, 31 Md.App. 271, 356 A.2d 277, 289.

■ The word "prosecution" within the constitutional provision providing that "in all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election" is a term of art and in legal perspective encompasses the act of sentencing. The sentence is the judgment and, when pronounced, terminates the criminal prosecution, except as otherwise provided by Rule 35(a), M.R.Crim.P., which empowers the sentencing justice to revise a sentence prior to the commencement of execution thereof and to correct an illegal sentence or a sentence imposed in an illegal manner within certain time limitations. See *Bradley v. United States,* 1973, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528; *United States v. Caldwell,* 1972, 3 Cir., 463 F.2d 590.

■ We may repeat what we said in *Green v. State,* 1968, Me., 247 A.2d 117 at 120:

"[W]hen the time for sentencing has been reached, the voice of the advocate will rise, in due protection of the offender, with vigorous, influential and informatory dialogue, to the end that the judicial choice of sentence may be made within a sound discretion in the light of all the mitigating circumstances favorable to his client."

■ Our Constitution extends to the accused after conviction the right to be heard "by himself and his counsel, or either, at his election." A meaningful exercise of such personal constitutional right mandates that at the time of sentence the convicted person be mentally competent in the legal sense.

■ Counsel's failure to suggest to the court present mental incapacity prior to or during the sentencing proceeding and to request a judicial determination thereof at that time is no bar in and of itself to a belated claim in a motion for revision of sentence. See *Thursby, supra,* at page 66.

▮ Counsel initially has the responsibility of raising the question of incompetence of the defendant to stand sentencing by bringing to the attention of the court such facts in his possession tending to show that the defendant was then incapable of understanding the nature and object of the sentencing proceedings and was unable to cooperate with him for the presentation of a meaningful allocution to the court. See *Thursby, supra,* at page 68.

▮ When counsel did not suggest to the trial court either at trial or at the sentencing stage the probability of the accused's present incompetence to stand trial and to be sentenced, an appellate court is justified in assuming, unless the contrary appears, that counsel was satisfied no such impairment then existed. *Thursby, supra,* at page 69.

▮ Whether the presiding Justice, on motion for revision of sentence, should have initiated a formal inquiry as to the mental competency of the defendant at the time of sentence is a question the solution of which rested in the sound discretion of the trial court. *Thursby, supra,* at pages 68–69. It is true that counsel at the hearing on the motion reiterated the history of past irrational behavior and abnormal conduct on the part of Mr. Dyer, including numerous suicidal attempts, together with his previous confinement for mental disturbance, evidence with which the trial Justice was familiar by reason of the fact that such evidence had been introduced at trial on the issue of not guilty by reason of mental disease or defect. The trial Justice evaluated Mr. Dyer's court room behavior in setting himself afire as the act of an exhibitionist and his seeming unconscious posture thereafter as a fake.

▮ The trial Court had the opportunity to observe the defendant and to evaluate his rational as well as factual understanding of the sentencing proceedings and the sufficiency of his ability to communicate with his lawyer and assist him in presenting a meaningful allocution prior to sentence. We cannot say from a review of this transcript that the Justice below abused his discretion in not revising his previous sentence and ordering an inquiry into the competency of the defendant for a future hearing on resentencing.

The entry will be

Appeal denied.

All Justices concurring.