**Paul CLEMENT**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Jan. 11, 1983.

Decided March 28, 1983.

Cloutier, Woodman & Cloutier, James F. Cloutier (orally), Portland, for plaintiff.

William R. Stokes (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

On Paul Clement's appeal from the denial of his petition for post-conviction relief, the only issue [1] involves his competence to stand trial on March 4, 1980, the day on which a justice of the Superior Court (Cumberland County) sitting without a jury tried him

1. The petition for post-conviction relief also asserted that Clement received ineffective assistance of counsel at his trial, but that issue, which was decided against Clement by the post-conviction justice, is abandoned on appeal.

and found him guilty of burglary and theft.[2] Clement's burglary and theft convictions resulted from his entering a Portland residence and stealing three pairs of women's underpants. After a full evidentiary hearing on the issue of Clement's trial competence, the Supreme Judicial Court justice who heard the post-conviction petition stated:

> After careful consideration of all the circumstances of this case, I cannot find that the trial justice, who observed the defendant throughout the trial, abused his discretion in regarding Mr. Clement as competent to stand trial without the necessity of further inquiry.
>
> . . . .
>
> Petitioner has not met his burden of proof . . . that the trial justice abused his discretion in determining that petitioner was capable of standing trial.

Clement first argues that the post-conviction justice should have determined, as an independent matter, whether Clement was in fact incompetent at the time of trial, and should not have limited his post-conviction review to an examination whether the trial justice had abused his discretion in not ordering a further inquiry on the issue. Second, Clement urges this court to find that the post-conviction justice erred in holding that the trial justice had not abused his discretion in finding Clement competent to stand trial without further inquiry. We affirm the ruling of the post-conviction justice on the latter point of appeal. Because we hold today that, in addition to a due process right to proper procedures at trial, Clement has a substantive right not to be tried while incompetent, we remand the case to the post-conviction justice for a finding, on the evidentiary record already made before him, whether Clement has proved that he was in fact not competent to stand trial on March 4, 1980.

■ Well before the trial justice imposed sentence upon Clement on April 4, 1980, the justice's attention was specifically drawn to the question of Clement's competence to stand trial by a motion for mental examination and observation filed by a new attorney who came in to handle post-trial proceedings on the defendant's behalf. The post-trial attorney further pressed the issue of Clement's trial competence by a motion to continue sentencing and later by renewing his motion for mental examination and by making a motion for new trial. The trial justice considered the competence question both at the sentencing hearing on April 4, 1980, and at the hearing on Clement's renewed motion for mental examination and motion for new trial on May 30, 1980. The trial justice denied all of the motions, saying that all he had observed of Clement and all the post-trial attorney had presented did "not raise the issue of mental disease or defect sufficient to require . . . a mental examination. . . . I find no basis in law to grant the motion for examination and observation."[3]

■ The post-conviction justice reviewed the trial justice's decision for abuse of discretion, applying the rule laid down in *Thursby v. State,* 223 A.2d 61, 68–69 (Me. 1966), as follows:

> Clement's conviction on March 4, 1980. That is not correct, because no criminal judgment had at that time been entered and furthermore the sentencing proceeding is a critical stage of the prosecution to which the competence requirement also applies. *See State v. Dyer,* 371 A.2d 1079, 1085 (Me.1977). Any error, however, did not long persist. After further hearings on Clement's renewed motion for mental examination and observation as well as a motion for new trial, the trial justice squarely addressed the trial competence issue in his rulings of May 30, 1980.

**2.** On the burglary count the trial justice sentenced Clement to the Maine State Prison for seven years. This court affirmed his conviction on direct appeal, *State v. Clements,* 431 A.2d 67 (Me.1981); and the Appellate Division of the Supreme Judicial Court, 15 M.R.S.A. § 2141 (1980), denied his appeal from the sentence. It now appears that the proper spelling of the petitioner's surname is "Clement."

**3.** By his comment at one point during the final sentencing hearing on April 4, 1980, the trial justice suggested that the issue of Clement's competence to stand trial was foreclosed by

[I]f the trial court learns from observation, reasonable claim or credible source that there is *genuine doubt* of defendant's mental condition to comprehend his situation or make his defense *it is the duty of the court* to order an inquiry concerning defendant's competence to stand trial, . . . and determine that issue, and it may do so on its own initiative. *The necessity for an inquiry under the particular circumstances addresses itself to the sound discretion of the court and its decision will not be disturbed except for arbitrary action or abuse of judicial discretion.*

(Emphasis added) We agree that the trial justice did not abuse his discretion in not ordering further mental examination of the defendant.[4]

"Competence to stand trial sufficient to meet the requirements of due process means that the accused is capable of understanding the nature and object of the charges and proceedings against him, of comprehending his own condition in reference thereto, and of conducting in cooperation with his counsel his defense in a rational and reasonable manner." *Id.* at 66; *see also Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). "A person may be insane according to many definitions of the word and still be capable of understanding the nature and object of the proceedings against him and be able in co-operation with his counsel, to conduct his defense in a rational and reasonable manner." *Thursby,* 223 A.2d at 67–68.

At no time did the trial justice nor Clement's defense counsel at trial nor the prosecuting attorney think that he was incompetent or that any sort of psychiatric evaluation was required. At the trial on March 4, 1980, Clement took the witness stand in his own defense and told a credible story, denying the charges against him. The trial justice had ample opportunity to observe him both during the trial and subsequently at the two sentencing hearings. Clement's trial counsel later testified at the post-conviction hearing that Clement had cooperated with him and that he never had any reservations or doubts about either Clement's mental capacity or his competence to stand trial. The assistant district attorney prosecuting Clement similarly stated on the post-conviction record that she at no time had any doubt of his competence to stand trial. Thus, all the principal trial participants other than the defendant himself were uniformly of the view that, in the words of *Thursby,* there was no "genuine doubt of defendant's mental condition to comprehend his situation or make his defense."

Clement's post-conviction attorney points to three factors that he says required the trial justice to order a full psychiatric evaluation of the defendant: 1) Clement's unusual attraction to women's undergarments; 2) his outbursts at trial and at the first sentencing hearing and his troublemaking at the county jail; and 3) a presentence report by Dr. Fuchs (a psychologist who saw Clement about two weeks after his trial) to the effect that Clement's mental status was then "not at all clear," that "Paul does not come across as clearly psychotic nor as obviously malingering." Those factors, however, do not individually or in the aggregate convince us that the trial justice abused his discretion. All of those factors were well known to the trial justice at the time he ruled and he was in a much better position than we to evaluate

---

4. Clement's motion for further mental examination at state expense raised a question identical to that raised in *State v. Anaya,* 456 A.2d 1255 (Me.1983), in regard generally to motions for public funds for expert investigations. As we there said,

[A]n indigent accused requesting public funds for experts must first show the trial court, to the extent he reasonably can then be expected to do so, why the services are necessary for an adequate defense. . . .

456 A.2d at 1263. The trial justice denied Clement's motion, saying, "I find no basis in law to grant the motion for examination and observation. . . ." By the *Anaya* test, Clement failed to show the trial justice why further psychiatric services were necessary for an adequate defense.

their significance in light of his own total observations.

However out-of-the-ordinary Clement's crime may have been, its nature has no bearing on his ability to understand court proceedings and to cooperate with his appointed counsel in his own defense. Clement's outburst at trial was relatively mild and he respected the judge's admonition. Although at the initial sentencing hearing ten days later Clement shouted obscenities at the trial justice, who proceeded to jail him for fifteen days for contempt, Clement's conduct did not mean that he had been incapable, in cooperation with his counsel, of conducting his defense in a rational and reasonable way. Nor did Dr. Fuchs' presentence report cast any real doubt on Clement's competence to stand trial. As this court recently said in *State v. Boone,* 444 A.2d 438, 444 (Me.1982):

> In general, a fact finder is not bound to accept the opinion of an expert, especially in the field of psychology which may not be the most exact of sciences. It is settled law that, with regard to the insanity defense, the fact finder may reject a psychiatrist's expert opinion, even if that opinion is not contradicted by other expert evidence.

In any event, Dr. Fuchs did not even venture an opinion that Clement was insane, and did not address the question of Clement's trial competence.

At the hearings before the post-conviction justice held nearly two years after Clement's trial, a psychiatrist and two psychologists, including Dr. Fuchs, testified on the question of Clement's competence to stand trial. That testimony, which was conflicting and all based on examinations at times other than March 4, 1980, does not alter our conclusion that the trial justice could without abuse of discretion find that no "genuine doubt" was raised at trial as to Clement's competence. As the post-conviction justice said, "the totality of the evidence falls short of proving that either [trial counsel] or the trial court ought to have perceived at or before the time of trial that

petitioner might be unable, as a result of mental or emotional disturbance, to understand the nature or object of the proceedings against him or to cooperate with counsel effectively in the conduct of the defense in a rational manner."

Clement's history and behavior are not at all comparable to that of the defendants in other cases holding that a hearing on competence was necessary at trial. In *Pate, Warden v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), "the evidence indisputably displayed a history of pronounced irrational behavior which no court could justifiably ignore." *Thursby,* 223 A.2d at 67. Robinson's seriously disturbed behavior started after he was hit on the head as a child by a brick dropped from a third story window and culminated in hallucinations, both visual and auditory, extreme and obvious withdrawal, his murder of his own son and his girlfriend, and his attempted suicide by shooting himself in the head. In *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the defendant, with four companions, raped his own wife, and "subject[ed] her to other bizarre abuse and indignities," *id.* at 165, 95 S.Ct. at 900; shot himself in the abdomen rather than face trial; proffered opinion evidence that he was not competent to stand trial; and, although his "fate depended in large measure on the indulgence of his wife, who had hesitated about pressing the prosecution," tried to choke her on the weekend prior to trial. *Id.* at 179, 95 S.Ct. at 907.

The Law Court has said that a hearing on the competence issue was not necessary in cases where the defendants involved exhibited much more bizarre behavior than did Clement. The *Thursby* defendant "had shot the deceased 5 times but disclosed no motive for the killing, except that prior to his leaving the house with his gun, he had the urge to kill something. . . ." 223 A.2d at 65. That defendant further stated "that he had no reason to do what he had done and that he was very sorry, but that he did not seem to be himself and that it did not seem as though it was he that did it." *Id.*

In addition, the only professional psychiatric testimony in the *Thursby* case asserted that the defendant was insane at the time of the crime. *Id.* at 67. In *State v. Dyer,* 371 A.2d 1079, 1084 (Me.1977), the defendant informed the court that "he had been a mental patient all his life, that he was classified by the experts as of the schizophrenic paranoid type." Further,

> [w]hen he realized that the presiding Justice would not continue the case for sentence, [defendant] Dyer reached into his pocket, pulled out a white envelope apparently containing a flammable substance and set himself on fire. The flames were extinguished. The defendant was handcuffed and placed in a stretcher. The Court then proceeded to pass sentence while the defendant lay on the stretcher with his eyes in a closed position.

*Id.* at 1085.

The trial justice acted well within the allowable range of his discretion in concluding that no genuine doubt existed as to Clement's competence to stand trial, and his failure to hold a full evidentiary hearing on that issue denied no procedural due process rights of Clement.

However, "[a] determination that insufficient doubt existed of a defendant's competence at the time of trial does not preclude a post-conviction inquiry into competence to stand trial." *Nathaniel v. Estelle,* 493 F.2d 794, 798 (5th Cir.1974). Whether a criminal defendant was accorded procedural due process at trial is a different question from whether his substantive due process right not to be tried when incompetent was in fact violated. Although the post-conviction justice conducted a full evidentiary hearing on the question of Clement's competence at the time of trial, he did not make a finding on that issue. On his petition for post-conviction relief, Clement was entitled to a factual determination whether he had established by a preponderance of the evidence any violation of his substantive due process right not to be tried when incompetent.

The entry is:

Judgment vacated.

Remanded to the post-conviction justice for his finding on the existing record whether petitioner has proved that he was in fact not competent to stand trial.

All concurring.