MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 164
Docket:        Sag-14-260
Argued:        May 13, 2015
Decided:       December 24, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

# JED R. MIDDLETON

v.

# STATE OF MAINE

HJELM, J.

[¶1] In 2010, after a jury trial, Jed R. Middleton was convicted in the Superior Court (Sagadahoc County, *Horton, J.*) of one count of gross sexual assault and fifteen counts of unlawful sexual contact. He later filed a petition for post-conviction review alleging that he was deprived of his constitutional right to effective assistance of counsel. Middleton claimed in part that trial counsel was ineffective by failing to seek a continuance of the sentencing hearing when Middleton was allegedly incompetent or, if he was competent, unable to exercise his right of allocution due to his emotional state. After a hearing, the court (*Horton, J.*) concluded that Middleton had not proved a constitutional deprivation and denied his petition. On this appeal, we affirm the judgment.

2

## I. BACKGROUND

[¶2] In its judgment, the post-conviction court made the following findings of fact, which are based on competent evidence in the record. *See Heon v. State,* 2007 ME 131, ¶ 5, 931 A.2d 1068.

[¶3] In January 2010 Middleton was indicted for one count of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), (4) (Supp. 1996),[1] and fifteen counts of unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C), (2) (Supp. 1993).[2] Middleton committed these offenses in the mid-1990s when the victim was between ages seven and eleven. Throughout the case, Middleton was represented by experienced defense counsel, Donald Lawson-Stopps. At the end of a three-day trial held in June 2010, a jury found Middleton guilty of all sixteen charges.

[¶4] Following trial, the court continued sentencing pending a psychological evaluation conducted by the State Forensic Service. The resulting report was filed, and in September 2010 the court held a sentencing hearing. At the hearing, Attorney Lawson-Stopps told the court that Middleton was "not in any emotional

---

[1] Title 17-A M.R.S.A. § 253(1)(B) (Supp. 1996) has since been amended by P.L. 2001, ch. 383, § 14 (effective Jan. 31, 2003) (codified at 17-A M.R.S. § 253(1)(B) (2014)) and P.L. 2003, ch. 711, § B-2 (effective July 30, 2004) (codified at 17-A M.R.S. § 253(1)(B) (2014)), but the amendments do not affect this appeal.

[2] Title 17-A M.R.S.A. § 255 (Supp. 1993) was repealed and replaced by P.L. 2001, ch. 383, §§ 22-23 (effective Jan. 31, 2003) and has since been amended several times, most recently by P.L. 2011, ch. 691, §§ A-14, A-15 (effective May 22, 2012) (codified at 17-A M.R.S. § 255-A (2014)).

condition . . . to even be able to address the [c]ourt." Attorney Lawson-Stopps did not request a continuance and proceeded to present a number of character witnesses, including Middleton's sister, who spoke of Middleton's positive contributions and loving relationships with friends and family members. None of the witnesses questioned Middleton's mental status. Attorney Lawson-Stopps then presented an argument that the court found to be well reasoned and supported by the law. When the court gave Middleton an opportunity to speak on his own behalf, Attorney Lawson-Stopps stated, "I'm not sure Mr. Middleton would be very coherent at this point."

[¶5] The court then sentenced Middleton on the charge of gross sexual assault to a prison term of twenty years, with all but eleven years suspended, and six years of probation. On each of the charges of unlawful sexual contact, the court imposed concurrent sentences of five years to be served concurrently with the twenty-year sentence. After pronouncing sentence, the court asked Middleton if he understood, and Middleton responded, "No, . . . I don't understand a thing." Expressing appropriate concern about this response, the court recessed the hearing to allow Attorney Lawson-Stopps to consult with Middleton. Immediately after the recess, Attorney Lawson-Stopps assured the court that Middleton understood

4

the sentence.[3] Middleton, who was present with Attorney Lawson-Stopps, did not express disagreement with that statement. The court then concluded the hearing.

[¶6] After the judgment of conviction was entered, Middleton filed a motion for new trial, *see* M.R. Crim. P. 33 (Tower 2014),[4] which the court denied; an application for leave to appeal sentence, *see* 15 M.R.S. § 2151 (2014); M.R. App. P. 20, which the Sentence Review Panel denied; and an appeal from the judgment itself, *see* 15 M.R.S. § 2115 (2014); M.R. App. P. 2, which we affirmed, *see State v. Middleton*, Mem-11-141 (Sept. 29, 2011).

[¶7] Soon before the statutory deadline, in October 2012, Middleton filed a petition for post-conviction review, *see* 15 M.R.S. §§ 2121-2132 (2012),[5] alleging that Attorney Lawson-Stopps's representation was ineffective during the pre-trial, trial, and sentencing phases of the case. Regarding the sentencing hearing, Middleton alleged that he was not competent and was unable to personally address the court due to his emotional condition, and that Attorney Lawson-Stopps's representation was therefore ineffective because he did not request a continuance.

---

[3] The transcript from the sentencing hearing, which is included in the post-conviction record, reveals that when the court resumed the hearing after the recess, Attorney Lawson-Stopps told the court, "[Middleton] understands the sentence. He understands the process. What he explained is that he had difficulty following what you were actually doing when you were giving out numbers."

[4] The Maine Rules of Unified Criminal Procedure (effective Jan. 1, 2015) were not in effect at the time of the proceedings. M.R.U. Crim. P. 1(e)(1).

[5] Certain sections of 15 M.R.S. §§ 2121-2132 have since been amended, though the amendments are not relevant to the present case. *See, e.g.*, P.L. 2013, ch. 133, § 3 (effective Oct. 9, 2013) (codified at 15 M.R.S. § 2121 (2014)).

[¶8]  After holding a hearing in December 2013, the court issued a written decision denying Middleton's petition.  Addressing the claims that focused on the sentencing hearing, the court credited Attorney Lawson-Stopps's testimony that although Middleton was emotional and anxious, he never believed at any time during the course of his representation that Middleton was incompetent.  The court rejected contrary views expressed by Middleton and his sister, describing their post-conviction testimony as a "post hoc characterization" of Middleton's mental state.  The court also noted that neither the presentence psychological report nor the character witnesses who spoke at the sentencing hearing made reference to "any present or previous lack of competence" on Middleton's part, and that in fact the witnesses spoke highly of Middleton and his accomplishments.  Based on Attorney Lawson-Stopps's statement at the sentencing hearing that Middleton would not be coherent if he addressed the court, and Middleton's assertion that he did not understand his sentence, the court found that Middleton "certainly . . . was overwhelmed emotionally and confused."  The court found, however, that this did not "necessarily indicate[] lack of competence . . . [or] ineffective assistance of counsel."  In addition, the court stated that it was "by no means persuaded that [Middleton] would have helped his own cause had he addressed the court. . . . If [Middleton] was indeed too overwhelmed with emotion to speak before being sentenced, that may have been a good thing."

[¶9]  Pursuant to 15 M.R.S. § 2131(1) (2014) and M.R. App. P. 19, Middleton sought a certificate of probable cause to appeal from the adverse judgment, and we gave Middleton leave to appeal on the single issue of "whether Middleton was prejudiced by his attorney's failure to ask for a continuance at sentencing."

## II.  DISCUSSION

[¶10]  The sole question presented for review is whether the post-conviction court erred by concluding that Middleton was not deprived of effective assistance of counsel when Attorney Lawson-Stopps did not seek a continuance of the sentencing hearing, at which Middleton was so "overwhelmed emotionally and confused" that he could not address the court on his own behalf.  Although Middleton's arguments implicate issues of competence and allocution, his ultimate claim is ineffective assistance of counsel.  We must therefore consider the former issues through the lens of Middleton's ineffectiveness claim and focus on Lawson-Stopps's decisions rather than the issues of competence and allocution in isolation.

[¶11]  "In appeals from judgments issued in post-conviction proceedings, we review questions of law de novo and apply a deferential standard of review to factual findings."  *Theriault v. State*, 2015 ME 137, ¶ 12, --- A.3d ---.  Because Middleton had the burden of proof on his ineffectiveness claim, he must

demonstrate on this appeal that the evidence compels a contrary conclusion. *See Heon*, 2007 ME 131, ¶ 8, 931 A.2d 1068.

[¶12] A criminal defendant is constitutionally "entitled to effective assistance of counsel during the sentencing process." *Francis v. State*, 2007 ME 148, ¶ 4, 938 A.2d 10 (quotation marks omitted); *see* U.S. Const. amend. VI; Me. Const. art. I, § 6. As we have recently reiterated, claims of ineffective assistance are governed by the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Manley v. State*, 2015 ME 117, ¶¶ 12, 18, 123 A.3d 219; *see also Theriault*, 2015 ME 137, ¶ 13, --- A.3d ---. Pursuant to that test, a petitioner bears the burden of proving both that "counsel's representation fell below an objective standard of reasonableness" and that the deficient representation resulted in prejudice. *Strickland*, 466 U.S. at 687-88. We hold that the post-conviction court did not err by finding that defense counsel provided objectively reasonable assistance, and do not reach the issue of prejudice. *See id.* at 697 (holding that a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one").

[¶13] Judicial inquiry into the effectiveness of representation is "highly deferential." *Id.* at 689. The post-conviction court must make

> every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because

> of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (quotation marks omitted). Applying this deferential standard, we consider in turn Middleton's arguments that Attorney Lawson-Stopps unreasonably infringed on Middleton's right to (1) be free from prosecution while legally incompetent, and (2) speak on his own behalf before the court imposed sentence.

A.    Competency at Sentencing

[¶14]    Middleton first argues that the evidence compelled the post-conviction court to find that Attorney Lawson-Stopps acted unreasonably by failing to request a continuance of sentencing to allow for a competency evaluation.

[¶15]    To sentence a criminal defendant while he is incompetent is a deprivation of his right to be heard and therefore is a violation of his constitutional right to due process. *Haraden v. State*, 2011 ME 113, ¶ 7, 32 A.3d 448. A defense attorney has the initial responsibility to alert a court to a defendant's possible incompetence. *State v. Dyer*, 371 A.2d 1079, 1086 (Me. 1977). A defendant is competent to be sentenced if he is "capable of understanding the nature and object of the charges against him, comprehending his own condition in reference thereto, and cooperating with counsel to conduct a defense in a rational and reasonable

manner." *Haraden*, 2011 ME 113, ¶ 7, 32 A.3d 448 (quotation marks omitted). A defendant who is emotional during sentencing may still be legally competent. *Cf. State v. Nickerson*, 2013 ME 45, ¶ 9, 66 A.3d 568.

[¶16]    Here, the evidence supports the court's affirmative finding that Attorney Lawson-Stopps—who the court described as having considerable criminal defense experience—never noticed behavior at any time during the course of the representation, including at sentencing, that caused him to believe that Middleton was incompetent.  The court further found that although Middleton was "overwhelmed emotionally and confused" at the sentencing hearing, this condition did not constitute a lack of competence.  These findings are supported by the court's direct observations of Middleton, the presentence psychological report, Attorney Lawson-Stopps's testimony, and, inferentially, the testimony of Middleton's character witnesses, none of whom questioned Middleton's competence.

[¶17]    Accordingly, the court did not err by rejecting Middleton's ineffectiveness claim based on his failure to prove that he was in fact incompetent or that Attorney Lawson-Stopps was on notice of any suggestion of incompetency.

B.    Right of Allocution

[¶18]    We next consider Middleton's alternate contention that Attorney Lawson-Stopps's    failure    to    seek    a    continuance    at    sentencing

10

unreasonably deprived Middleton—as a competent defendant—of his right of allocution.[6]

[¶19]  "The right of allocution allows a defendant to personally address the court before sentencing in an attempt to mitigate punishment."  *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991); *see also Allocution*, Black's Law Dictionary (10th ed. 2014) (defining allocution as a defendant's "unsworn statement . . . to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence"); Kimberly A. Thomas, *Beyond Mitigation: Towards a Theory of Allocution*, 75 Fordham L. Rev. 2641, 2643-44 (2007) (arguing that the purposes of allocution include sentence mitigation and humanization of the defendant).

[¶20]  Here, in concluding that Attorney Lawson-Stopps made a reasonable strategic decision to proceed with sentencing notwithstanding Middleton's emotional and confused state, the post-conviction court explained,

---

[6]  The court did not expressly find that Middleton was unable to *talk* meaningfully at the sentencing hearing.  In fact, the court explained that it engaged in purposeful dialogue with Middleton about whether he understood the sentence.  The court found only that "[i]f [Middleton] was indeed too overwhelmed with emotion to speak before being sentenced, that may have been a good thing." (emphasis added).  For purposes of our analysis, we evaluate Middleton's claim assuming that the court's characterization of Middleton's emotional condition amounted to an inability to *allocute* in a meaningful or functional way.

What [Middleton] would have said at sentencing is not of record. Defense counsel usually and appropriately recommend that defendants not speak when being sentenced unless what they intend to say will benefit them. If [Middleton] was indeed too overwhelmed with emotion to speak before being sentenced, that may have been a good thing.

[¶21] Although this reasoning suggests a finding that Middleton was not prejudiced by Attorney Lawson-Stopps's decision to proceed with sentencing, it also is tantamount to a determination that Attorney Lawson-Stopps's conduct fell within the "wide range" of practice and decisions that are within the scope of "reasonable professional assistance." *Strickland*, 466 U.S. at 689. Because Middleton did not move for further findings of fact, we infer that the court found the facts necessary to support this conclusion. *See State v. Dodd*, 503 A.2d 1302, 1307 (Me. 1986) (stating that if there is no request for findings of fact pursuant to M.R. Crim. P. 23(c), we will infer that the court found the facts necessary to support its conclusion, if those findings are supported by the record); *Crandall v. State*, 297 A.2d 94, 97 & n.2 (Me. 1972) (explaining that M.R. Crim. P. 23(c) and M.R. Civ. P. 52(a) are similarly applied).

[¶22] A defendant's protestation of innocence can signify an affirmative refusal to accept responsibility or express remorse, which the court is entitled to treat as an aggravating factor at sentencing. *See* 17-A M.R.S. § 1252-C(2) (2014); *State v. Grindle*, 2008 ME 38, ¶ 26, 942 A.2d 673. At the post-conviction hearing,

12

Middleton testified that prior to trial he told Attorney Lawson-Stopps that he believed he was innocent—a position he maintained throughout the proceedings, including at the post-conviction hearing. Thus, Attorney Lawson-Stopps could have reasonably determined that Middleton, if he had allocuted, might have made a defiant statement to the court and denied responsibility for his proven criminal conduct, thereby damaging his interest in minimizing the sentences.

[¶23] Defense counsel is charged with the "overriding mission of vigorous advocacy of the defendant's cause." *Strickland*, 466 U.S. at 689. As a corollary of this principle, defense counsel also bears the responsibility to take steps to secure an outcome for the defendant that is favorable under the circumstances. *Cf. Roberts v. State*, 2014 ME 125, ¶ 27, 103 A.3d 1031 (holding that representation was effective because, in part, it "further[ed] the interests of the accused"); *Bucci v. United States*, 662 F.3d 18, 32 (1st Cir. 2011) (holding that representation was constitutionally reasonable when, among other things, it "increase[ed] the defense's chances of securing a not-guilty verdict"). Because a continuance might have set the stage for Middleton to make a statement that could have resulted in greater sentences than the court actually imposed, the court did not err by concluding that Middleton received effective representation despite the fact that Attorney Lawson-Stopps did not seek a continuance.

[¶24] Middleton further argues that irrespective of whether his allocution statement might have prompted the court to impose greater sentences, Attorney Lawson-Stopps's failure to ensure Middleton's opportunity to address the court was inherently unreasonable because the right of allocution is constitutional in magnitude and "personal" to him. This argument fails for two reasons.

[¶25] First, it is not at all clear that the opportunity to allocute has constitutional roots. In *Hill v. United States*, 368 U.S. 424, 425-28 (1962), the United States Supreme Court held that a sentencing court's failure to provide a criminal defendant with the opportunity to address the court personally at sentencing, though a violation of the Federal Rules of Criminal Procedure, *see* Fed. R. Crim. P. 32(i)(4)(A)(ii),[7] does not violate the defendant's federal constitutional rights.[8] Further, most federal circuit courts have held that "a defendant's right to a sentencing allocution is a matter of criminal procedure and not a constitutional right." *United States v. Li*, 115 F.3d 125, 132 (2d Cir. 1997); *accord, e.g., United States v. Hoffman*, 707 F.3d 929, 937

---

[7] *Hill* discusses Fed. R. Crim. P. 32(a), which has since been restyled and recodified at Fed. R. Crim. P. 32(i)(4)(A)(ii).

[8] The *Hill* Court reserved the question whether the denial of allocution would amount to a constitutional due process violation if certain "aggravating circumstances" were present—namely, if the court were "misinformed or uninformed as to any relevant circumstances" or affirmatively denied the criminal defendant's express request to speak. *See Hill v. United States*, 368 U.S. 424, 429 (1962); *accord McGautha v. California*, 402 U.S. 183, 218 & n.22 (1971), *vacated on other grounds sub nom.*, *Crampton v. Ohio*, 408 U.S. 941 (1972). These circumstances were not present here, and Middleton does not argue that they were.

(8th Cir. 2013); *United States v. Smith*, 705 F.3d 1268, 1274 (10th Cir. 2013); *United States v. Leavitt*, 478 F.2d 1101, 1104 (1st Cir. 1973). *See generally State v. Abdullah*, 348 P.3d 1, 90-94 (Idaho 2015) (surveying the right of allocution as explicated in federal and state courts).

[¶26] We have been more explicit in our discussion of Maine constitutional jurisprudence, stating in dictum that "no provision in the constitution . . . in this state . . . creates" a right of allocution.[9] *Brine v. State*, 160 Me. 401, 403, 205 A.2d 12, 13 (1964). In a more recent case, we discussed allocution as it relates to article I, section 6 of the Maine Constitution, which we concluded protects a defendant's "right to be heard by himself and his counsel, or either, at his election" at a sentencing hearing. *See Dyer*, 371 A.2d at 1085 (quotation marks omitted). We construed that constitutional provision to require that a defendant be mentally competent at sentencing so that he can "cooperate with [defense counsel] for the presentation of a meaningful allocution to the court." *Id.* at 1086. *Dyer*, however, did not directly address whether sentencing a defendant who, like Middleton, is competent but nevertheless unable to meaningfully allocute would violate that

---

[9] In *Brine*, we also stated in dictum that no "statute or rule of court in this state" creates a right of allocution. *Brine v. State*, 160 Me. 401, 403, 205 A.2d 12, 13 (1964). The case was decided in 1964, however, which was one year before the Maine Rules of Criminal Procedure were adopted to recognize, among other things, a right of allocution. *See* M.R. Crim. P. 32(a)(2); M.R.U. Crim. P. 32(a)(2) & introductory note. Therefore, the statement in *Brine* that no Maine court rule creates such a right is no longer true.

defendant's constitutional rights. *See id.* at 1084-86. Instead, our precedents suggest only that the right of allocution stems from the common law and from Rule 32 of the Maine Rules of Criminal Procedure.[10] *See, e.g., State v. Chesnel*, 358 A.2d 381, 383 (Me. 1976) (suggesting that allocution is a matter of criminal procedure); *Alexander v. Sharpe*, 245 A.2d 279, 286-87 (Me. 1968) (same); *Brine*, 160 Me. at 403, 205 A.2d at 13 (discussing common law rationales for allocution).

[¶27] Second, even if Middleton's right of allocution is constitutional, representation by counsel that results in the forfeiture of a constitutional right does not inevitably lead to the conclusion that the representation was ineffective. *Ayotte v. State*, 2015 ME 158, ¶ 25, --- A.3d --- ("In some circumstances, the decisions of counsel that result in a forfeiture of an accused's constitutional rights

---

[10] Rule 32(a)(2) is identical in both the Maine Rules of Criminal Procedure, which were in effect at the time of the sentencing hearing, and the Maine Rules of Unified Criminal Procedure, which became effective on January 1, 2015. That rule provides:

> Before imposing sentence on a Class C or higher crime, the court shall address the defendant personally and inquire if the defendant desires to be heard prior to the imposition of a sentence. . . . The defendant may be heard personally or by counsel or both. Failure of the court to so address the defendant shall not affect the legality of the sentence unless the defendant shows that he or she has been prejudiced thereby.

M.R.U. Crim. P. 32(a)(2); M.R. Crim. P. 32(a)(2). Middleton does not challenge the court's compliance with Rule 32 during the sentencing hearing, when it addressed Middleton personally and invited him to speak. Although defense counsel responded instead of Middleton, the interchange fulfilled the requirement of the rule, which states that "[t]he defendant may be heard personally *or by counsel* or both." *Id.* (emphasis added). *But see Green v. United States*, 365 U.S. 301, 304 (1961) (holding that under Rule 32 of the Federal Rules of Criminal Procedure, the right of allocution is personal to the defendant, and is not satisfied by affording counsel an opportunity to speak on the defendant's behalf).

16

are not tantamount to ineffectiveness.");[11] *see also Roberts*, 2014 ME 125, ¶ 27, 103 A.3d 1031. In *Roberts*, for example, we affirmed the trial court's finding of effective representation even though counsel requested that portions of jury selection be conducted in chambers, thereby intruding into the accused's Sixth Amendment right to a public trial, because that process promoted the goal of obtaining a fair and impartial jury and therefore was in the accused's best interests. 2014 ME 125, ¶ 27, 103 A.3d 1031. We reasoned that although "criminal defendants are entitled to competent representation, the Constitution does not ensure that defense counsel will recognize and raise every conceivable constitutional claim . . . particularly [when] . . . pressing a constitutional claim is *unlikely to further the interests of the accused.*" *Id.* (alteration omitted) (emphasis added) (quotation marks omitted). Here, even though Middleton was unable to personally address the court in allocution, the court did not err by finding that Attorney Lawson-Stopps's decision to proceed with sentencing was objectively reasonable, because a continuance might have allowed Middleton at a later date to make a statement harmful to his liberty interests.

---

[11] In *Ayotte*, we held that trial counsel's representation was necessarily ineffective because, due to a misunderstanding of the law, counsel did not assert a defense that would have foreclosed the criminal prosecution altogether. *Ayotte v. State*, 2015 ME 158, ¶ 25, --- A.3d ---. Here, on the other hand, any inability of Middleton to address the court did not demonstrate ineffective representation by Attorney Lawson-Stopps because, as the court suggested in its findings, he could have reasonably determined that proceeding with sentencing could work to Middleton's benefit. *See supra* ¶¶ 20-22.

[¶28] Therefore, we conclude that the evidence did not compel the court to find that Middleton was deprived of constitutionally effective assistance when Attorney Lawson-Stopps proceeded with, rather than seeking to continue, the sentencing hearing notwithstanding Middleton's confused and emotional state.[12]

The entry is:

Judgment affirmed.

**On the briefs:**

Thomas J. Connolly, Esq., Portland, for appellant Jed R. Middleton

Geoffrey A. Rushlau, District Attorney, and Patricia A. Mador, Asst. Dist. Atty., Office of the District Attorney, Bath, for appellee State of Maine

**At oral argument:**

Thomas J. Connolly, Esq., for appellant Jed R. Middleton

Patricia A. Mador, Asst. Dist. Atty., for appellee State of Maine

Sagadahoc County Superior Court docket number CR-2012-148
FOR CLERK REFERENCE ONLY

---

[12] Although Middleton also argues that Attorney Lawson-Stopps should have requested a continuance because of his alleged failure to inform Middleton about the opportunity to allocute or otherwise prepare him for the sentencing hearing, this argument fails for the same reasons. When we infer factual findings to support the court's ultimate conclusion that Middleton did not prove ineffectiveness, *see State v. Dodd*, 503 A.2d 1302, 1307 (Me. 1986), the record supports a finding that Attorney Lawson-Stopps could have reasonably determined that a delay in sentencing to help Middleton prepare an allocution statement would have resulted in a worse outcome, because even with more information or time to prepare, Middleton was very unlikely to express remorse. Therefore, the evidence did not compel the post-conviction court to find that defense counsel acted unreasonably by failing to seek a continuance of sentencing so that he could further prepare Middleton to make a damaging statement.