MYRISC #330-18
9/19/18

STATE OF MAINE
KENNEBEC, SS.

UNIFIED CRIMINAL DOCKET
AUGUSTA
DOCKET NO. CD-CR-17-1573

JOSEPH OLIVEIRA,
       Petitioner

v.                                    **DECISION AND ORDER**

STATE OF MAINE,
       Respondent

Petitioner Joseph Oliveira (hereinafter "Petitioner") has filed a Petition for Post-Conviction Review pursuant to 15 M.R.S. §§ 2121-2132. Hearing was had on August 10, 2018 with respect to the Petition at which Petitioner testified along with Petitioner's trial counsel Lisa Whittier (hereinafter "TC") and criminal defense attorney Andrei Maciag. Petitioner was represented by Attorney Andrew Wright, Esq. while the State was represented by assistant district attorney Tyler LeClair.

At hearing Petitioner claimed ineffective assistance of counsel by alleging four separate grounds:

(a) Trial counsel failed to conduct independent testing on the drugs seized which, according to Attorney Wright, "would have provided exculpatory information. Specifically, counsel did not receive a certificate of controlled substance analysis until the date of jury selection. Such unchallenged discovery violation and lack of independent investigation and or testing thereby affected the substantial rights of petitioner."

(b) "Trial counsel was ineffective in failing to conduct an adequate pretrial investigation with regard to the retention of expert witnesses thereby affecting the substantial rights of petitioner."

(c) "Trial counsel was ineffective in failing to file pre-trial evidenciary motions thereby affecting the substantial rights of petitioner."

(d) "Trial counsel coerced or otherwise manipulated petitioner to enter a plea of guilty. Said plea was not entered voluntarily and knowingly pursuant to the United States and State of Maine Constitutions, thereby affecting the substantial rights of petitioner."

After hearing, and after the undersigned has had the opportunity to review the file, applicable case law, and statutory provisions relevant to the issues at hand, the Court enters this **Decision and Order** for the reasons set forth below:

*Procedural History:*

1. Petitioner plead guilty to Aggravated Trafficking in Scheduled Drugs, Class A, Unlawful Possession of Scheduled Drugs, Class B, Unlawful Possession of Scheduled Drugs, Class C, Trafficking in Prison Contraband, Class C, and Violation of Conditions of Release, Class E, all on September 9, 2016. The State dismissed a separate count of Aggravated Trafficking in Scheduled Drugs, Class A as part of a plea negotiation.

2. At the time of the plea Petitioner had a significant criminal history background such that both sides agreed a "straight" sentence was appropriate. There was no agreement as to what that sentence should be.

3. Previous to the plea TC had provided Petitioner with the discovery material in hand as well as filed a Motion To Suppress which was denied after hearing *(Marden, J.).*

4. After the motion was denied Petitioner and TC discussed the possibility of an "conditional" guilty plea; however, no such plea was subsequently entered.[1]

5. Petitioner was sentenced to six years to the Department of Corrections with a fine of $400.00 by the undersigned. TC had provided the Court with several prior cases that TC believed were comparable sentences for similar crimes. The State argued for a sentence of eight years to the Department of Corrections.

6. The undersigned accepted the Petitioner's plea after satisfying himself that the plea was knowing and voluntary and that the State could prove it case against Petitioner beyond a reasonable doubt.

7. During the sentencing phase Petitioner acknowledged "yes" to the Court's inquiry "Is that what happened?" after the State recited the evidence against Petitioner. (S.T. at 15). Petitioner also acknowledged that he understood the Court was inclined to impose a straight six year sentence, that Petitioner was entering his plea knowingly and voluntarily, and that he was pleading guilty because he was in fact guilty of the offenses and wanted to take responsibility for his actions. (S.T. at 9). Finally, Petitioner acknowledged that he had had sufficient time to discuss his rights and options with TC, that he was satisfied with her legal services and advice, and that TC had **not** tried to get Petitioner to plead guilty over his objections. (S.T. at 10).

---

[1] At sentencing the Court specifically inquired if Petitioner was entering his plea conditionally. TC responded in the presence of the Petitioner, "He is not." (Rule 11 Proceedings transcript at 21).

2

## *Standard of Review For Alleged Ineffective Assistance of Counsel:*

8. The Law Court in *Theriault v. State,* 2015 ME 137 noted that *Strickland v. Washington,* 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) is the "seminal case" that establishes the standards controlling the disposition of claims of ineffective assistance of counsel. *See also Manley v. State,* 2015 ME 117, P 12.

9. The right of an accused to be represented by counsel is "a fundamental component of our criminal justice system guaranteed by the Sixth Amendment of the United States Constitution…" *Laferriere v. State,* 697 A.2d 1301 (Me. 1997); *U.S. v. Cronic,* 466 U.S. 648, 653 (1984). Because of the fundamental role that defense counsel play in ensuring the fairness of the criminal justice system, the right to counsel is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970).

10. The post-conviction court applies a two-prong test in adjudicating a claim for ineffective assistance of counsel. First, the Court determines whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance…below what might be expected from an ordinary fallible attorney, *McGowan v. State,* 894 A.2d 493 (Me. 2006) at 496-97. Second, the Court determines whether the attorney's performance likely deprived the defendant of an otherwise available substantial ground of defense or likely affected the outcome of the proceeding. *Id.* at 497 (noting that the federal and state guarantees are virtually the same).

11. *Strickland v. Washington* requires the Court to evaluate the totality of circumstances and notes that there is a strong presumption that trial strategy and tactics fall within the wide range of reasonable professional assistance. Accordingly, judicial scrutiny of trial counsel's performance is supposed to be highly deferential. *Id.* at 689; *Theriault v. State,* 2015 ME 137, P 38 (*Alexander, J.* dissenting).

12. To meet his burden, the petitioner must affirmatively show prejudice. *McGowan* at 497. This requires a positive showing rather than mere conjecture. *Francis v. State,* 938 A.2d 10 (2007).

13. Because sentencing is a critical stage of a criminal proceeding, and a defendant is constitutionally entitled to counsel, he is also entitled to effective assistance of counsel during the sentencing process. *Id.*

14. The standard for determining the validity of a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 686 (1984).

15. *Strickland* provides a two-prong test: first, a defendant must show that their attorney's performance was deficient, with the first prong evaluating the attorney's performance based on a "reasonably effective assistance" standard, and

3

the second prong evaluating whether the attorney's performance, if deficient, prejudiced the defense. *Id.* At 687; *Manley v. State*, 2015 ME 117, ¶ 12-13; *Salley v State*, 2017 ME 176, ¶ 18.

16. The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra*, at 687. The second prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

17. A defendant is not required to show that their counsel's deficient conduct more likely than not altered the outcome of the case; rather, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* At 693-94; *Manley, supra*, at ¶ 13; *Theriault v. State*, 2015 ME 137, ¶¶ 30, 31-32 (in evaluating a claim of prejudice, the "reasonable probability test" and not the "outcome determinative test" is applied).

18. Three factors can be considered in determining prejudice: (a) the strength of the State's case, (b) the effectiveness of the presentation of the defense absent the evidence petitioner argues should have been offered, and (c) the potential value of that evidence in undermining the credibility of the State's witnesses' testimony. *Gonzalez-Soberal v. United States*, 244 F.3d 273, 278 (1ª Cir. 2001).

19. The Law Court in post-conviction review matters has regularly instructed trial courts to be cautious in their evaluation of trial counsel's performance in order to avoid reaching a result based solely on hindsight. The Law Court has repeatedly held that it will accord trial counsel great deference in their tactical decisions and these decisions are reviewable solely for "manifest unreasonableness." *See Pierce v. State*, 463 A.2d 756, 759 (Me. 1983). Manifest unreasonableness occurs only when counsel's performance deprives the defendant of a substantial ground of defense. *Twist v. State*, 617 A.2d 548 (Me. 1992).

20. Indeed, a post-conviction court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Middleton v. State*, 2015 ME 164, ¶ 13.

21. The undersigned finds the Petitioner's recollection of the events leading up to and during the plea and sentencing lacking at best¹ and simply not credible at worst. For example, during the hearing Petitioner firmly answered "No" to the question from his counsel whether during his Rule 11 hearing and sentencing the concept of a conditional plea was "listed or mentioned at any time "; however, the

---

¹ At best, the Court finds that Petitioner, in the immortal words of Roger Clemens, "misremembers" crucial aspects of the events leading up to the plea and sentencing.

4

Rule 11 transcript clearly states that TC told the Court "and he is also foregoing entering his plea conditionally." Rule 11 transcript at 21 (hereinafter "TT"). Moreover, the undersigned had made it clear previously to counsel for both sides that, while the Court was inclined to disagree with the State and give Petitioner a straight six year sentence if Petitioner plead guilty, the Court would **not** entertain a conditional guilty plea with a six year sentence. TT at 37.

22. It is clear from this hearing that TC was aware of the Law Court's decision in *State v. Pinkham*, 2016 ME 59, a case decided less than five months before the Rule 11 hearing, and how that case might possibly impact the State's case. TC discussed the possible ramifications of the *Pinkham* decision with Petitioner. TC ultimately decided not to pursue a defense based upon the *Pinkham* decision because the amount of drugs recovered "likely would have reached the threshold" rendering the *Pinkham* decision moot. TT at 40.

23. The State did provide its certificate concerning the drug analysis extremely late in the process; however, it is the undersigned's conclusion that the most plausible result of the State's "discovery violation" as termed by Petitioner's counsel would be for the Court to continue the matter. Although it is theoretically possible, the undersigned finds in light of Petitioner's criminal record and the serious charges facing him that it was extremely unlikely that the Court would have dismissed the charge involved as a sanction for the late discovery disclosure.

24. More to the point, what the Court believes and so finds was going on here was that the focus of TC and the Petitioner concerning the sentence Petitioner would be receiving from the Court if/when he was convicted, in light of the State's argument for what was termed a "heavy" sentence as well as in light of Petitioner's criminal past. The Petitioner and TC **could** have argued the discovery violation and proposed sanctions, Petitioner and TC **could** have pressed forward with the concept of a conditional guilty plea; however, there was no guarantee what would have happened, except that the Court had made it clear that the six year sentence the Court was contemplating would vanish **if** a conditional guilty plea was entered. As Attorney Maciag so aptly put it at this hearing, "(S)o there's a lot of speculative outcomes here..." TT at 100.

25. The undersigned finds Petitioner wanted to take advantage of the Court's representation that, after comparing similar cases with similar fact patterns, the Court was inclined to sentence Petitioner to a straight six year sentence, that Petitioner did not want to take any steps to put such a result in jeopardy, and so decided to enter his plea to the charges he faced with the exception of having one of the two most serious charges being dismissed.

26. This Court declines to find that TC's performance in representing the Petitioner was marred by "serious incompetency, inefficiency, or inattention of counsel amounting to performance...below what might be expected from an ordinary fallible attorney", and declines to find that "the attorney's performance likely deprived the Defendant of an otherwise available substantial ground of defense or likely affected the outcome of the proceeding...". Any other result in

5

the Court's mind would be based solely on hindsight of what **might** have occurred if all rulings went the way of the Petitioner.

27.  For the reasons stated above, the Petition For Post-Conviction Review is **denied.**

Date: 9/19/18

BY _____
Robert E. Mullen, Deputy Chief Justice
Maine Superior Court

Entered on the docket        9|24|18